UNITED STATES of America,
Appellee,

v.

William Wesley HARRIS et al.,
Appellants.

Nos. 71-1573 to 71-1576.

United States Court of Appeals,
Tenth Circuit.

July 5, 1972.

Rehearing Denied Aug. 7, 1972.

Darrel W. Frogley, Kansas City, Kan., for appellants, Harris, Monroe, and Odom.

Thomas E. Joyce, Kansas City, Kan. (Joseph T. Carey, Kansas City, Kan., with him on the brief), for appellant, Willis.

Glen S. Kelly, Asst. U. S. Atty., Kansas City, Kan. (Robert J. Roth, U. S. Atty., Kansas City, Kan., with him on the brief), for appellee.

Before LEWIS, Chief Judge, and HOLLOWAY and BARRETT, Circuit Judges.

LEWIS, Chief Judge.

On November 9, 1970, the Tower State Bank of Kansas City, Kansas, was robbed of $15,732 by Thomas Jefferson Colvin and Kenneth Leon Lewis. As a result of the crime, Colvin and Lewis pled guilty to a violation of 18 U.S.C. § 2113(a), (d) and testified against appellants and one Gordon, each charged as principals under 18 U.S.C. § 2 for aiding and abetting in the commission of the crime. Gordon was acquitted and Harris, Monroe, Odom and Willis were convicted after a joint trial. Colvin testified in detail concerning the involvement and role of each appellant in the robbery. Subsequent to conviction appellants discovered that Colvin's guilty plea had been the subject of considerable plea bargaining and this fact premises their appellate contentions that the government suppressed favorable defense evidence and the trial court erred in denying a new trial sought upon newly discovered evidence.

Colvin's plea of guilty in the case at bar was taken in the Western District of Missouri under Rule 20, Fed.R.Crim.P., before Judge Oliver of that district. At such time Colvin also pled guilty to a charge of robbing the Southeast State Bank in Kansas City, Missouri. The pleas were made and accepted after a full disclosure of the plea bargain made between the defendant and the government. The agreement, although comprehensive, may be summarized.

Upon acceptance of his pleas of guilty to the Kansas and Missouri bank robberies, Colvin, waiving his fifth amendment rights in open court before Judge Oliver, agreed to testify in the two cases. In return the government assured Colvin that all other prosecutions, pending or potential, state or federal, would either be dismissed or not filed by the interested authorities. The offenses included at least the following: escape from the Kansas State Penitentiary; seven armed robberies in Kansas and Missouri; assault upon a police officer; carrying a concealed weapon; aggravated assault; assault and battery; possession of a stolen car; car theft; and bank robbery (federal). In regard to such crimes the Missouri district attorney represented to Judge Oliver:

> Yes, Your Honor, it is my understanding that the FBI has secured the agreement of each one of the respective jurisdictions and their Prosecuting Attorneys, and that those cases which are pending at the time of sentencing in this case are to be dismissed. Those cases which have not yet been filed will not be filed.

Four days after Colvin's entry of plea in Missouri, and before sentencing, trial of the case at bar began in Kansas. Nothing in the record indicates that the trial judge, the district attorney, or the several defense counsel had any knowledge of the details surrounding Colvin's plea in the case. The contrary is indicated. The district attorney expressed concern about Colvin's fifth amendment rights, the trial court carefully advised Colvin in such regard and that witness in one instance refused an answer when advised he could do so. Our case clearly involves lack of information, not lack of good faith.

■■ Appellants readily admit that the evidence of the government's plea bargain with Colvin does not directly probe the guilt of appellants. Thus we do not consider the case to be within the specific compulsion of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L. Ed.2d 215, as a denial of due process. However, the suppression, inadvertent or not, by the government of evidence favorable to the defense and affecting the credibility of a key prosecution witness may result in such inherent unfairness as to be violative of due process.

*See* Link v. United States, 8th Cir., 352 F.2d 207, *cert. denied,* 383 U.S. 915, 86 S.Ct. 906, 15 L.Ed.2d 669. And in this regard we summarily reject the government's contention that defense counsel should have discovered the Missouri proceedings because of their public nature or recognized the likelihood of plea bargaining through cross-examination of Colvin.

■■ In cases involving the deliberate suppression of exculpatory evidence the courts will not inquire into the elusive question of actual prejudice affecting the result of a criminal prosecution. But where, as here, the denied evidence results from what might be termed unintentional and passive (though not excusable) nondisclosure a different test is indicated. The test must be whether the trial was merely imperfect or was unacceptably unfair. As a general rule, a new trial is not necessitated because of newly discovered evidence of a cumulative or impeaching nature unless its potential impact upon the result of the trial is apparent. King v. United States, 10 Cir., 402 F.2d 289; United States v. Gleeson, 10 Cir., 411 F.2d 1091. The trial court applied this rule in denying post-conviction relief and except for the very exceptional circumstances which we here consider we would accept that ruling.

■■ The evidence of Colvin's plea bargain is cumulative only in that term's broadest sense. It is true that Colvin's credibility was subject to attack and question because he was an admitted accomplice, a convicted felon, a heroin addict, and was hopeful of some leniency because of his testimony. But it is also true that the incriminating testimony of an accomplice whose credibility is accepted is almost hopelessly damaging to the defense. Great leeway should be accorded the defense in establishing such a witness' subjective reasons for testifying. In this case at bar, Colvin's reason for testifying was premised squarely upon the plea bargain. His "hope for leniency" had in main part been already accomplished through relief from the potential of a multitude of prosecutions.[1] So, too, the government's reliance on the witness is reflected not only in the terms of the plea bargain but throughout over 130 pages of trial transcript testimony of Colvin. The jury should have known of this aspect of the case and fairness requires that the defense be given full opportunity to pursue and argue the matter.

Other claims of error made by appellants have been considered and determined to either lack merit or to be directed to matters not inherent in a further trial. We consider the evidence in support of the conviction of appellant, Willis, although minimal, to be sufficient under the present record to have been submitted to the jury for its consideration.

The judgment is reversed with directions to grant each of the appellants a new trial.

---

1. Judge Oliver recognized the potential impact of the plea bargain. In complying with Rule 11, Fed.R.Crim.P., he inquired:

THE COURT: All right, now, let me ask you if anyone has made any threats against you and threatened you that if you don't plead guilty in this case that they are going to proceed with vigor not only in all the cases that have been filed but all of the other cases that may be filed and to spring a bunch of consecutive sentences on you that would be comparable to some of those sentences down in Texas where they are up to over a thousand years at the present time?

THE DEFENDANT: No, sir, they haven't.