No. 49,094

STATE OF KANSAS, *Appellee,* v. DAVID A. CORN, *Appellant.*

(575 P.2d 1308)

Opinion filed February 25, 1978.

*Alan L. Rupe,* of Holland & Rupe, of Russell, argued the cause and was on the brief for the appellant.

*Larry D. Ehrlich,* county attorney, argued the cause and *Curt T. Schneider,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

McFARLAND, J.: This is a direct appeal from conviction by a jury of aggravated kidnapping (K.S.A. 21-3421) and rape (K.S.A. 21-3502).

William Griffith, Steven Corn, Sheryl Hutchison, and the defendant, David Corn, went to the home of the victim, Barbara Pitt, shortly after midnight, August 27, 1976. Barbara Pitt was working until midnight that evening. The group consumed alco-

holic beverages. After about an hour, Steven and Sheryl left. Thereafter, the defendant and Barbara repeatedly embraced. While the couple were so occupied, William removed Barbara's wallet from her purse. The two men left. Shortly thereafter Barbara discovered the theft of her billfold, and went to Sheryl's house to talk to her about it. She was unable to rouse anyone at Sheryl's house and returned home. Meanwhile, David and William had returned to Barbara's home. William remained in the car. Barbara confronted David in the driveway about the stolen billfold. They argued on the driveway and then went inside the house. David denied taking the wallet and he and Barbara searched her house for it. David became angry and struck Barbara with a soft drink bottle and his fists. David then told her he intended to have sex with her and that he would kill her if she did not cooperate. Barbara's clothes were removed. David was physically unable to complete the sexual act and Barbara laughed at him and ridiculed him for his lack of sexual prowess. David struck Barbara in the face, gagged her, and tied her hands together. He wrapped a blanket around her nude body, took her by the arm and walked to his car where she was placed in the trunk.

David drove to an isolated area outside of town, opened the trunk, and told Barbara to put the blanket on the ground. David had sexual intercourse with Barbara and then told William it was his turn. William had sexual intercourse with her and then David had intercourse with her a second time. David told her to get back into the trunk. She asked not to be put back into the trunk and she was allowed to get into the back seat. Barbara was concerned about the theft of her money as she had promised to give her daughter money for doughnuts in the morning. She was given two dollars by William. Barbara was returned to her home after she told David she would not call the police. Before he left, David told her not to call the police and that she had better cooperate next time he was in town. (She lived in Russell and he lived in Wichita.) Barbara called the police upon being returned to her home and both William and David were charged with aggravated kidnapping, rape, aggravated battery, aggravated assault, and theft. Through plea negotiations, William pled guilty to rape with the balance of the charges being dismissed as to him, and testified for the state at David's trial. The defendant herein was tried on all counts except the theft charge which was dismissed on motion of

the state at the beginning of the trial. The jury found the defendant guilty of rape and aggravated kidnapping and not guilty of aggravated battery and aggravated assault.

The defendant's first claim of error is the trial court improperly restricted his cross-examination of Barbara Pitt and William Griffith. The claim as to Barbara Pitt will be dealt with first.

K.S.A. 60-447a(1) provides:

"Except as otherwise provided in subsection (2), in any prosecution for the crime of rape, as defined by K.S.A. 21-3502, or for aggravated assault with intent to commit rape, as provided in K.S.A. 21-3410, or for an attempt to commit rape, as provided in K.S.A. 21-3301, or for conspiracy to commit rape, as provided in K.S.A. 21-3302, evidence of the complaining witness' previous sexual conduct with any person including the defendant shall not be admissible nor shall any reference be made thereto in the presence of the jury, except under the following conditions: A written motion by the defendant shall be made at least seven days before the commencement of the trial to the court to admit evidence or testimony concerning the previous sexual conduct of the complaining witness. The seven-day notice required herein may be waived by the court. The motion shall state the nature of such evidence or testimony and the relevancy thereof, and shall be accompanied by an affidavit in which an offer of proof of such previous sexual conduct of the complaining witness is stated. The court shall conduct a hearing on the motion in camera. At the conclusion of the hearing, if the court finds that evidence proposed to be offered by the defendant regarding the previous sexual conduct of the complaining witness is relevant and is not otherwise inadmissible as evidence, the court may make an order stating what evidence may be introduced by the defendant and the nature of the questions to be permitted. The defendant may then offer evidence and question witnesses in accordance with the order of the court."

The trial court permitted the defendant to depose Barbara Pitt prior to trial. In her deposition Barbara recounted her past sexual activities with almost photographic detail. The witness was further questioned as to movies seen and books read that involved the portrayal of explicit sexual acts. In the deposition no stones were left unturned and no furrows were left unplowed on this subject. Barbara was thirty years old at the time her one hundred and forty-eight page deposition was taken and had led an active life. The reason for all of this dredging into past activities was that the defendant was trying to establish that Barbara liked "kinky" sex and that, accordingly, she was not really an unwilling participant in the events of the night in question. The deposition does not support defendant's theory as to Barbara's willing participation. The trial court did not permit such latitude in the cross-examination of Barbara at the trial, but let the defense

establish that she had had a variety of prior sexual experiences. We find there was no abuse of discretion in the limiting of the cross-examination of Barbara Pitt.

We turn now to the limitation placed on the defense as to the witness William Griffith. In his opening statement defense counsel said:

"Finally, we're going to hear the testimony as I mentioned during voir dire, of David Corn's friend, William Griffith, who pled guilty to rape. That's going to be very interesting testimony, and a very interesting place to apply the theory, the standard of reasonable doubt.

". . . and do you know that William Griffith was not convicted, as the county attorney said he was, he was not convicted, he pled guilty to rape; and do you know, when he pled guilty to rape, he was faced with aggravated kidnapping, aggravated battery, and aggravated assault charges, the same as Mr. Corn is facing right now. He faced the sentence that could be imposed of up to life in prison by the Court. Of course, he faced that sentence. He copped out. He didn't have enough faith in the jury system to say, wait a minute, twelve people are going to say I didn't rape her; David Corn does, and he's going to prove it to you.

". . . .
"William Griffith pled guilty. He applied for probation. Probation will be considered after this hearing. Now, whether Mr. Griffith goes free or not is going to depend a lot on his testimony."

The cross-examination of William Griffith by defense counsel on this subject was as follows:

Q. "Now, you know, as an accomplice or a person going along with, you were facing the same kind of penalties that David Corn is facing if he is convicted?
A. "You mean previously—
Q. "You know that you were charged with aggravated assault, aggravated kidnapping, and aggravated battery, and rape?
A. "Yes.
Q. "You know that the penalty was life imprisonment for kidnapping—
MR. EHRLICH: "Object, your Honor.
THE COURT: "Sustained. The jury will disregard that.
Q. (By Mr. Rupe) "You knew you were faced with those charges?
A. "I knew what I was charged with and what—
Q. "And you pled guilty to rape?
A. "Yes, I did."

Counsel for the defendant continued on re-cross examination of the accomplice, William Griffith, with the following question:

Q. "You realize that you were charged, that you could have been convicted as an accomplice on all those counts, don't you?
A. "Yes, I realize that."

Immediately after the examination of William Griffith a recess

was held and a hearing was held in the court's chambers with the following comments being made relative to the reference to the penalty and sentence involved herein:

THE COURT: "One thing, Alan, that I think we need to get on the record. In your opening remarks you made the statement relative to life imprisonment, and you brought it out again here. I don't want you to mention that any more.

MR. RUPE: "Okay.

THE COURT: "I don't think it's proper.

MR. RUPE: "For the record, there was no objection in my opening statement.

THE COURT: "No, I realize that, and I let it—I let go, and the county attorney didn't object to it; but I'm just saying, at this stage, in giving you the advice that when it comes time to argue in closing, or whatever other witnesses you got on the stand, I don't think it's a proper area to go into.

MR. RUPE: "Okay."

Later on in the trial the defendant indicated he desired to call William Griffith as a defense witness. The following conversation was had in chambers:

MR. RUPE: "Well, this whole trial has been a situation where I have to ask before I can introduce evidence; and I realize that I should inquire whether I can put William Griffith upon the stand, about your comments as to life imprisonment, whether or not I would be allowed to inquire whether or not he has been granted probation and when his—

MR. EHRLICH: "I object. Because of the comments that Mr. Rupe has already made, I'm going to be requesting an instruction relative to sentencing now.

THE COURT: "I think if he were already granted probation, or if he were already sentenced, then you could say, aren't you, bla, bla—but I think while this is still something that hasn't happened, I don't think that you can inquire into—

MR. RUPE: "Then in that event, William Griffith will not be called as a witness."

The credibility of an accomplice or informant is subject to attack. Great leeway should be accorded the defense in estab-lishing such a witness' subjective reason for testifying. (*United States v. Harris*, 462 F.2d 1033 [10th Cir. 1972].)

In *State v. Wheeler*, 215 Kan. 94, 523 P.2d 722, the trial court refused to allow defense counsel to question a witness as to whether he had made a deal with the attorney general's office to avoid prosecution. In *Wheeler* we said:

"It appears to us this was a proper area to be plumbed by cross-examination. One of the legitimate uses of that handy tool is to test the veracity and credibility of those who take the witness stand. [Citation omitted.] While the extent of cross-examination for purposes of impeachment lies largely within the sound discretion of the trial court [citations omitted], we believe discretion was over-

reached in this case. Whether the state's witness was under compulsion or special inducement to testify was, in our judgment, a proper subject to be explored. [Citation omitted.]" (pp. 99-100.)

In the case at hand the defense counsel did get the point to the jury that the witness who had been charged as a co-defendant had resolved his case through plea bargaining. The information that defendant had thereby avoided risk of conviction of the most serious charge was also before the jury. We hold that the limitation on the cross-examination was improper, but that under the totality of the circumstances of this case it was harmless error beyond a reasonable doubt.

The defendant's next claim of error is that the trial court erred in not granting defendant a new trial as the evidence was insufficient for a conviction of rape.

The test for determining the sufficiency of the evidence in a criminal case is whether the evidence is sufficient to form the basis for a reasonable inference of guilt when viewed in the light most favorable to the state. (*State v. Childers,* 222 Kan. 32, 563 P.2d 999.) We have carefully reviewed the record and find there was sufficient evidence to support the conviction of rape.

The defendant's next claim of error is that the trial court erred in not granting the defendant a new trial on the grounds that evidence outside the scope of the bill of particulars was admitted and that an improper instruction was given to the jury on the element of force required in the rape charge.

The defendant requested and received a bill of particulars. K.S.A. 1977 Supp. 22-3201(5) provides:

"When a complaint, information or indictment charges a crime but fails to specify the particulars of the crime sufficiently to enable the defendant to prepare his or her defense the court may, on written motion of the defendant, require the prosecuting attorney to furnish the defendant with a bill of particulars. At the trial the state's evidence shall be confined to the particulars of the bill."

The purpose of a bill of particulars was discussed in *State v. Frames,* 213 Kan. 113, 515 P.2d 751:

"The purpose of a bill of particulars in a criminal action is twofold: (1) To inform the defendant as to the nature of the charge and the evidence against him to enable him to prepare his defense, and (2) to enable the defendant to avoid further prosecution for the same offense.

"A bill of particulars is nothing more than a statement of facts which collectively describe the offense set forth generally in the complaint, information or indictment." (Syl. 2, 3.)

The defendant contends the state went outside the bill of particulars in presenting evidence that, in the rape, the victim's resistance was overcome by force *and fear* while the bill of particulars mentions only force. K.S.A. 21-3502 states the woman's resistance must be overcome by force *or* fear. The defendant has little cause to complain. The amended bill of particulars incorporated all statements made by Barbara Pitt. The defendant had adequate notice of the offense with which he was charged and was not prejudiced by the slight variance. It should be noted that instruction No. 5 required the state to prove the victim's resistance was overcome by both force *and* fear. The variance did not diminish the state's burden of proof, it increased it. The state had to prove not only force, but fear as well.

The jury sent the following question to the court:

"By force and fear, was this at the house or on the blanket?"

The record shows the following occurred relative to the answer to be given:

"THE COURT: The question is, 'By force and fear, was this at the house or at [*sic*] the blanket?' I think they're referring to instruction number 3, are they not?

"MR. RUPE: Number 5.

"THE COURT: Well, but that's the third item on instruction—or rape, it's the third element that they're talking about.

"MR. EHRLICH: I see. Compared to number 5 on rape—what are they talking about, number 5 on rape?

"THE COURT: Well, he's talking about instruction number 5. Okay, I'm listening, gentlemen. Have you got any ideas?

"MR. RUPE: I would suggest that giving them the same response you did on the last question.

"THE COURT: Well—

"MR. EHRLICH: I'll have to agree.

"MR. RUPE: Now, if we want to use the bill of particulars, I think the response would have to be on the blanket.

"MR. EHRLICH: I don't know what the bill of particulars would have to do with it, I don't know. It would be another document for them to—try to read, and I wouldn't see at all where that would be.

"MR. RUPE: I'm not [*sic*]

"THE COURT: Members of the jury, the Court acknowledges your question.

"Why can't I tell them that it's their duty to decide the case from all of the evidence introduced, and all the instructions as given, not singling out any one, applying them as a whole to all of the evidence.

"MR. EHRLICH: I was just going to indicate to the Court, I think the instruction number 1, which in essence is what the Court has stated.

"THE COURT: Do you have any objection to that.

"MR. RUPE: Now, I'm going to object to that on the basis of the bill of particulars, and on the basis of the evidence.

"THE COURT: Well, all I'm in effect, telling them is that it's their duty not to single out one instruction, but to consider all the instructions and all the evidence.

"Do you object to that?

"MR. RUPE: Well, I think you will admit that they can come back with a verdict of guilty on aggravated assault or guilty on aggravated battery. I think in terms of the specific question with regard to the blanket or the house, I think that the evidence has shown, and I think the bill of particulars defines that the force and fear, if we still impute fear into force, was on the blanket, if it was at all.

"THE COURT: Well, okay, anyway this is going to be the answer. This will be the way I'm going to answer this, and this is the way you'll type it.

"Members of the jury, your question is acknowledged, and my answer to you is this:

"You must decide this case on the evidence admitted and the instructions given. You must not single out one or more instructions, but you should construe each in light and in harmony with the other instructions and should apply the instructions as a whole to the evidence. Respectfully. Please save.

"Now, you can note your objection if you want to.

"MR. EHRLICH: Your Honor, did you say the word construction or instruction?

"(Whereupon the reporter checked what was said and verified that it was the word instruction.)"

The above citation is included as the state contends the defendant did not object to the answer. On appeal the defendant is arguing that the answer went outside the scope of the bill of particulars and permitted the jury to look to the aggravated battery charge to support the force element of the rape charge. The answer given by the court does not actually answer the precise question posed by the jury. However the defense counsel did not lodge an objection to the final answer. We hold, under the totality of the circumstances, that this point is without merit.

The defendant's next claim of error is the failure of the trial court to instruct on the lesser included offense of kidnapping. Kidnapping is defined in K.S.A. 21-3420 as follows:

"Kidnapping is the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person:

"(a) For ransom, or as a shield or hostage; or

"(b) To facilitate flight or the commission of any crime; or

"(c) To inflict bodily injury or to terrorize the victim or another; or

"(d) To interfere with the performance of any governmental or political function."

Aggravated kidnapping is defined in K.S.A. 21-3421 as follows:

"Aggravated kidnapping is kidnapping, as defined in section 21-3420, when bodily harm is inflicted upon the person kidnapped."

The trial court has an affirmative duty to instruct on lesser included offenses whether or not requested to do so by the accused, but the duty arises only where there is at least some evidence on which the jury might convict of the lesser offense. Failure to instruct on some lesser degree of a crime is not grounds for reversal if the evidence at trial excludes a theory of guilt on the lesser offense. (*State v. Wright,* 221 Kan. 132, 557 P.2d 1267.) Bodily harm to the victim is the additional element elevating kidnapping to aggravated kidnapping.

In the case at hand, the beating of Barbara Pitt occurred prior to her transportation. The state relies on the rape of the victim as the requisite bodily harm to the victim. Rape supplies the element of bodily harm necessary to make a kidnapping aggravated kidnapping. (*State v. Ponds and Garrett,* 218 Kan. 416, Syl. 8, 543 P.2d 967.)

Identity is not an issue in the case. The party, the argument over the wallet, the beating of Barbara Pitt by the defendant, the attempted intercourse in the house, the taking her to the car, the ride to the country in the trunk, the two acts of sexual intercourse in the country, and the return of Barbara to the house are admitted by the defendant. The defendant contends the acts in the country were not rape as the victim was not unwilling, although he did not testify she orally agreed to anything. At most it can be said that he testified that at first she did not resist and that later she enjoyed herself. His testimony is not as strong in support of the point on appeal as his counsel would suggest in his brief.

As previously stated, failure to instruct on a lesser offense is not error unless there is some evidence on which the jury might reasonably convict the defendant of the lesser offense. In the posture of the case presented to the jury, the defendant could not have been convicted of aggravated kidnapping unless the jury found Barbara Pitt had been raped after being taken from her home. The jury found that the rape had occurred in convicting the defendant of the crime of rape. Accordingly, the only way the defendant could have been found guilty of kidnapping as opposed to aggravated kidnapping would be if the jury did not find a rape had occurred. We hold that it was improper not to instruct on kidnapping as a lesser included offense as there was some evidence on which a jury could have reasonably convicted the defendant of that offense. However, we do not find the failure to

instruct on kidnapping to be prejudicial error under the totality of the circumstances of this case which circumstances include the finding of guilty on the rape charge which would negate any possibility of the jury finding the defendant guilty of kidnapping rather than aggravated kidnapping. An unusual circumstance is present in this case in that if this court were to find the failure to instruct on kidnapping was reversible error, then on retrial the defendant would not be entitled to the kidnapping instruction as the bodily harm element of aggravated kidnapping has already been determined by the conviction of rape in the former trial.

The defendant's final claim of error is that the trial court invaded the province of the jury and thereby violated defendant's constitutional rights. The basis for this claim of error is that the jury sent a note to the court that it had reached verdicts on three of the counts but could not agree on the fourth. The jury was brought back into court in the presence of counsel. The record reflects the following:

"(Whereupon the following proceedings were had in the presence and hearing of the jury; the defendant was present.)

"THE COURT: Mr. Keller, it's my understanding that you're the foreman; is that correct, sir?

"MR. KELLER: Yes.

"THE COURT: The bailiff has indicated that the jury has arrived at a verdict on several of the charges, but at this time you cannot arrive at a verdict on one of them.

"MR. KELLER: That's correct.

"THE COURT: Without telling me how you've been voting, have you been making any progress on the one you haven't arrived at a verdict yet on?

"MR. KELLER: No.

"THE COURT: Do you feel like if you would go and eat and come back and consider that some more that you could make sufficient progress and arrive at a verdict relative to the one that you haven't arrived at a verdict on?

"MR. KELLER: Well, as we discussed it, ·there is eleven to one in the agreement on this one part; agreement on three parts.

"THE COURT: On three of them you've arrived on a unanimous verdict; and on the other one, without indicating, that's been your vote, eleven to one?

"MR. KELLER: Ten to two.

"THE COURT: Well, have you been making progress on the one charge that you haven't come to an agreement on?

"MR. KELLER: No, your Honor, we're at a standstill.

"THE COURT: You don't think that any additional deliberations, that you could arrive at a verdict?

"MR. KELLER: I believe that would have to be questioned, your Honor, of the other jurors. I feel that's all the answer I can give you on that. That's the one point that we have been debating on for so long.

"THE COURT:   I see. Well, would you hand the material that you have at this time to the bailiff?

"(Jury foreman responded.)

"THE COURT:   Counsel, approach the bench.

"(Whereupon the following proceedings were had out of the hearing of the jury.)

"THE COURT:   Well, they've deliberated three hours. I can send them in or send them out to eat, make them deliberate some more; but from what he's saying, they're not going to make any progress on the one that they are hung up on.

"MR. RUPE:   For the record, I think he was saying eleven to one, and some of the jurors were saying ten to two, for the record.

"MR. EHRLICH:   I don't know. I suggest that possibly a break. It might do some good. They've been at it a long time."

The trial judge then talked to the jury about taking a break and then continuing their deliberations.

The foreman volunteered the numerical split on the count on which they could not agree. The court did not try to coerce the jury into a unanimous verdict as was done in *Berger v. United States,* 62 F.2d 438 (10th Cir. 1932). We hold this did not constitute reversible error.

After the jury was sent on recess, the trial court examined the materials and told counsel what the verdicts they agreed on were. This turned out to be inaccurate. However, defense counsel relayed this information on to his client. This conduct by the trial court was highly improper and is not condoned by this court. However, it in no way affected the outcome of the trial and, accordingly, is not reversible error.

All points having been carefully considered, the judgment is affirmed.

HOLMES, J., dissenting.