No. 56,869

STATE OF KANSAS, *Appellee,* v. DONALD E. DAVIS, *Appellant.*

(697 P.2d 1321)

Opinion filed April 11, 1985.

*Carl E. Cornwell,* of Kansas City, argued the cause, and *Keith C. Sevedge,* of Kansas City, was with him on the brief for the appellant.

*Wesley K. Griffin,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Nick A. Tomasic,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal in a criminal action from a

jury verdict finding Donald E. Davis (defendant-appellant) guilty of aggravated robbery (K.S.A. 21-3427).

The facts will be briefly stated since the defendant does not challenge the sufficiency of the evidence. Around 9:30 p.m. on April 26, 1983, Robert Johnson was walking along a street in downtown Kansas City, Kansas, when a car pulled up beside him. There were three men in the car. The driver leaned over and asked directions, which Johnson gave. Johnson then started walking away, but the driver called him back. At this point, the driver pointed a gun at Johnson and demanded that Johnson hand over the portable stereo he was carrying. When Johnson hesitated, the front seat passenger got out and took the stereo from him and told him that it would be best to go on and forget about the whole thing. Johnson testified that the driver kept the gun pointed at him the entire time. The front seat passenger never got between him and the gun. He also testified that he didn't hear any conversation among the three in the car. He noticed that the man in the back seat was trying to hide his face with his hands.

Within an hour after the robbery, three suspects were arrested who fit the description Johnson had given police. That same night, Johnson identified Donald Coty as the driver, Eddie Davis as the back seat passenger, and the defendant as the fron. seat passenger who took the stereo. Johnson also identified the gun that was found in the suspects' car as the gun that had been pointed at him.

The suspects were given *Miranda* warnings at the time of their arrest. All three denied having any involvement with the robbery. The defendant did admit that the gun found in the car belonged to him and that he had purchased it earlier that day.

At trial, the defendant presented an "entrapment" defense. He testified that on the night of the robbery, he had gone in a car with Coty and his Uncle Eddie to purchase some liquor and marijuana. Coty was driving and he was also holding the money given him by the other two for the purpose of buying the liquor. When Coty saw the victim walking along with the stereo, he said he "had to have the radio." The defendant testified that he tried to talk Coty out of committing the robbery. Coty ignored him, and drew his pistol and demanded the stereo from the victim. When the victim hesitated, Coty told the defendant to get out and grab it. Coty then pointed the gun at the defendant's head

and said, "If you don't get out, I'll shoot you." At this point, the defendant got out of the car and took the stereo from the victim. Coty then drove to a nearby house and sold the stereo for $35. Coty allegedly kept all the proceeds from the sale.

The defendant testified that he did not willingly participate in the armed robbery; he acted out of fear of Coty. The defendant denied any involvement in planning the robbery. He did admit lying to the police about his knowledge of the crime. He said he had lied because he was afraid to "snitch" on Coty.

Eddie Davis' testimony was basically the same as the defendant's. He added that Coty had yelled at the defendant when he told him to get the stereo. Although Eddie Davis had originally been charged with aggravated robbery, the charges had been dismissed prior to the defendant's trial.

Donald Coty also testified for the defense. Prior to testifying, he had pled guilty to the reduced charge of attempted robbery. At the defendant's trial, Coty maintained his innocence. He claimed it was the defendant who had actually pulled the gun and committed the robbery.

The first issue raised by the defendant is whether the trial court erred in limiting defendant's examination of Donald Coty.

Coty had originally been charged with aggravated robbery while armed with a dangerous weapon. Following plea negotiations, Coty pled guilty to attempted aggravated robbery. At Davis' trial, defense counsel wished to question Coty about the reasons he took the lesser charge, the negotiations of the plea, and the penalty provisions of both the original and reduced charges. The State objected only to questions concerning the penalty provisions as this would allow the jury to hear the penalty in store for the defendant if they found him guilty of aggravated robbery.

The Court sustained the objection, stating:

"I don't have any problem with you going over with the witness what he was originally charged with and what occurred as far as plea negotiations are concerned and what he initial—ultimately wound up pleading guilty to. But I would think that by allowing you to make a big deal about the reduction and what all the possible consequences and ramifications of that plea are, it takes away from the question in this case, and that is the innocence or guilt of your client, and puts in some information that the jury may or may not consider about the disposition of Mr. Coty's case."

Following this ruling, defense counsel questioned Coty about

his original charge, the plea, and the plea bargaining. Mention was made of a plea to a lesser charge and the possibility of probation. Coty testified that he had not been promised anything by the State for testifying against the defendant.

The credibility of an accomplice is subject to attack and great leeway should be accorded the defense in establishing the witness's subjective reason for testifying. *United States v. Harris,* 462 F.2d 1033 (10th Cir. 1972); *State v. Corn,* 223 Kan. 583, 575 P.2d 1308 (1978); *State v. Ramsey,* 228 Kan. 127, 612 P.2d 603 (1980). On the other hand, it lies within the sound discretion of the trial court to determine the propriety and scope of the examination and, absent a showing of a clear abuse of the exercise of the power of discretion, there is no prejudicial error. *United States v. Walton,* 552 F.2d 1354 (10th Cir. 1977); *State v. Carr,* 230 Kan. 322, 634 P.2d 1104 (1981). See also 81 Am. Jur. 2d, *Witnesses* § 560, pp. 561-64.

In the case at bar, the jury was informed that the witness had been charged as a codefendant and resolved his case through plea bargaining. The information that the witness had thereby avoided the risk of conviction of the more serious charge was also before the jury. This court has previously held that inquiry into whether the witness was offered any "arrangement or deal" by the State in exchange for his testimony is crucial. *State v. Wheeler,* 215 Kan. 94, 523 P.2d 722 (1974); *State v. Ramsey,* 228 Kan. at 130. In this case, defense counsel was afforded the opportunity to inquire whether or not Coty had made any such "deal" with the State. Coty testified that he had not.

We hold that the trial court did not abuse the exercise of its power of discretion in limiting the examination, and the defense counsel was afforded reasonable latitude in examining the witness.

The defendant next contends that the trial court erred in denying his proffer of surrebuttal evidence.

After the defense had rested, the trial judge allowed the State to present a rebuttal witness. The witness was a book-in officer from the jail where Coty had been held after his arrest. The witness testified that Coty had only $5.23 in his "property bag" which was returned to him when he was released from jail. The State apparently sought to show that Coty had not sold the stereo for $35, or had not pocketed all of the proceeds himself.

On cross-examination, the witness admitted that he knew only how much money Coty had when he was released, and he did not know how much Coty might have had when he was initially placed in custody.

Following this testimony, the State rested. The defendant offered no surrebuttal. The trial judge informed the jury that both parties had rested and there would be no more evidence. However, following a lunch break, counsel for the defendant asked to present testimony, from the clerk of the municipal court, that Coty had paid a $30 traffic fine prior to his release. The trial judge did not allow the evidence, stating that reopening the case would unnecessarily delay the trial and the proffered evidence was not material to the disposition of the case.

The admission of rebuttal and surrebuttal evidence lies within the sound discretion of the trial court and the trial court's ruling will not be reversed absent a clear abuse of the exercise of that power of discretion. *State v. Richard,* 235 Kan. 355, 681 P.2d 612 (1984); *State v. Weigel,* 228 Kan. 194, 612 P.2d 636 (1980).

In our opinion the judge abused the exercise of his power of discretion by refusing the admission of the surrebuttal evidence. The trial would not have been "unnecessarily delayed" by the additional testimony. It is inconceivable that the testimony could have taken much longer than fifteen minutes.

We are not persuaded by the trial court's reasoning that the proffered evidence was immaterial to the disposition of the case. The testimony of the surrebuttal witness may not have been material, in and of itself, but it became significant in light of the rebuttal evidence. The defendant was on trial for a grave offense—a Class B felony—and he had the right to have the "whole picture" before the jury. As it stood, the jury knew that Coty had only $5.23 when he was released from jail. Therefore, it appeared that he did not pocket the proceeds from the sale of the stereo as the defendant had claimed in his testimony, and that Coty's testimony was credible when he said the defendant was the principal culprit. By the court's refusal to give the defendant a chance to account for another $30, which Coty had when he was arrested, the defendant was unfairly prejudiced. Therefore, we find the trial court erred by refusing to allow the surrebuttal evidence.

Finally, the defendant contends the trial court erred in excluding certain impeachment testimony.

During redirect examination of Donald Coty, the defense elicited comments from the witness that "[robbing] ain't my lifestyle." Defense counsel then inquired:

"Q: Okay. You're telling this jury that this isn't your lifestyle and you in fact do not go out and rob people?
"A: And rob people, period.
"Q: Never done that before?
"A: No. In my life."

Following this testimony, the defendant sought to present testimony from Vanilla DeFrance, the defendant's mother, that Coty "makes his living beating people, particularly white dudes, over the head and taking their money and jewelry." The trial court ruled that the proffered evidence was inadmissible.

K.S.A. 60-420 allows any party, including the party calling the witness, to introduce extrinsic evidence "concerning any conduct by him or her or any other matter relevant" for the purpose of attacking the witness's credibility. However, evidence of traits of a witness's character other than honesty or veracity or their opposites, as well as evidence of specific instances of conduct relevant only to prove such traits of character, are inadmissible as affecting credibility. See K.S.A. 60-422(c) and (d); *State v. Nixon,* 223 Kan. 788, 576 P.2d 691 (1978).

The State argues that Ms. DeFrance's testimony relates to "specific instances of conduct" and is therefore inadmissible. We disagree. The proffered testimony was not being offered for the purpose of showing that Ms. DeFrance knew of specific occasions when Coty has robbed people. It was offered, instead, as rebuttal testimony to show that Coty was probably not telling the truth when he said he had *never* robbed anyone.

Coty's credibility was extremely important. If the jury believed his story, they would have to find the defendant guilty. Therefore, we find it was prejudicial to the defendant for the court to exclude evidence which put Coty's credibility in doubt, and which should have been admitted under K.S.A. 60-420.

In so holding, we find the reasoning of this court in *State v. Nixon,* 223 Kan. 788, persuasive. In *Nixon,* the defendant was being tried for rape. The sole issue was consent, and it was the victim's word against the defendant's. During the cross-examination of the victim, the defendant elicited testimony that she

had used marijuana, but had never sold it. In an attempt to show she was not "truthful," the defendant sought to admit testimony from a witness who alleged he had purchased marijuana from the victim. Such testimony was excluded by the trial court pursuant to K.S.A. 60-422(d).

On appeal, this court held that even though no statute allowed for its admission, the evidence was improperly excluded. In reaching this conclusion, we applied the rationale of *Dewey v. Funk*, 211 Kan. 54, 505 P. 2d 722 (1973), that if one party offers an irrelevant and inadmissible fact which is received in evidence, the other party may reply with similar evidence "whenever it is needed for removing an unfair prejudice which might otherwise have ensued from the original evidence, but in no other case." 211 Kan. 56. We stated in *Nixon:*

"While it is true in the case at bar that it was the defendant who first elicited the objectionable testimony from the complaining witness, once it had been allowed, without objection, defendant should have been able to show that it was false.

. . . .

"[U]nder the peculiar facts and circumstances in this case, we find that it was error to preclude the defendant from presenting evidence in an attempt to prove that the prosecuting witness had been untruthful in her testimony." 233 Kan. at 794.

In the instant case, just as in *Nixon*, the credibility of the witness Coty was a major factor in the outcome of the case. Moreover, in this case, unlike *Nixon*, the proffered testimony was not inadmissible under any subsection of K.S.A. 60-422.

The general rule for attacking a witness's credibility, K.S.A. 60-420, authorized the admission of the rebuttal testimony of Ms. DeFrance. This rule is supported by the rationale of *State v. Nixon*, 223 Kan. 788. Accordingly, we find the trial court erred by excluding the proffered evidence.

In accordance with the foregoing opinion, we find prejudicial error and hold the case must be reversed and remanded for a new trial.

LOCKETT, J., concurring and dissenting: Except for the majority's restriction on the defendant's right of cross-examination, I concur. Under the circumstances of this case, the majority effectively deprives the defendant of a meaningful cross-examination in an effort to keep the jury from hearing the possible penalty the defendant could receive if convicted of the crime charged.

Under the Kansas law it is for the jury to determine from the facts presented into evidence whether or not the defendant is guilty. If the defendant is convicted, it is the duty of the trial judge to sentence that defendant pursuant to the statutory guidelines. The possible penalty that may be imposed upon a person if convicted by jury is not material nor relevant to the issues the jury must decide. Therefore, neither the State nor the defendant is allowed to introduce into evidence the statutory penalties for the crimes charged.

The right of cross-examination is one of the cornerstones of our trial procedure. The general rule is when one party introduces a portion of a conversation into evidence, the other party through cross-examination has a right to introduce the balance of that conversation, when relevant or material to the issues, into evidence.

We have always allowed great latitude in the cross-examination of an accomplice who testifies for the State at the trial of his associates. The accomplice must disclose all that he and his associates may have said or done in relationship to the offense. Cross-examination is used to impeach or discredit the accomplice, and the accomplice may be required to disclose whether or not he has been promised leniency or immunity for testifying. We instruct our jury, "An accomplice witness is one who testifies that he was involved in the commission of the crime with which the defendant is charged. You should consider with caution the testimony of an accomplice." PIK Crim. 2d 52.18.

Here the majority will allow inquiry into whether the accomplice, who has turned State's witness, was offered any arrangement or deal by the State in exchange for his testimony. The majority then would allow the trial judge by using his discretion to determine whether or not the differences in the penalty provisions, which resulted from the accomplice's plea bargaining, should or should not be admitted into evidence. It is only the difference in the penalty provisions that convinced the accomplice to enter a plea and, without that information, the value received by the accomplice for his testimony is withheld from the jury.

The majority has, in effect, deprived the defendant of the right to show to the jury the true value of the plea bargaining agreement received by the accomplice. Under such circumstances the

defendant was deprived of his fundamental right of cross-examination.

PRAGER and HERD, JJ., join the foregoing concurring and dissenting opinion.