NOT DESIGNATED FOR PUBLICATION

No. 112,397

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SIMON GARCIA,
*Appellant*.

MEMORANDUM OPINION

Appeal from Lyon District Court; W. LEE FOWLER, judge. Opinion filed December 23, 2015. Affirmed.

*Michelle David*, legal intern, and *Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Amy L. Aranda*, first assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., PIERRON and LEBEN, JJ.

POWELL, J.: A jury convicted Simon Garcia of a single count of trafficking contraband in a correctional facility. Garcia now appeals his conviction, asserting four points of error: (1) There was not sufficient evidence to prove that he had notice that marijuana and tetrahydrocannabinol (THC), its active ingredient, were classified as contraband items in the Lyon County Jail; (2) the district court erred in allowing the State to amend its complaint after the conclusion of its evidence at trial; (3) the district court violated the Confrontation Clause by limiting Garcia's counsel's questioning of a witness

1

regarding his sentence; and (4) cumulative error. Because we find sufficient evidence to support Garcia's conviction and no error on the part of the district court, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Garcia was charged with two counts of violating K.S.A. 2011 Supp. 21-5914(a)(3), trafficking contraband in a correctional institution, by possessing marijuana and a pipe in the Lyon County Jail.

At trial, Detention Officer Amy Michaels of the Lyon County Jail testified that on January 11, 2013, the jail received a tip from an inmate's girlfriend that Michaels felt warranted investigation. She and Detention Officer Kale Schankie followed up on the call by checking the inmate's cell. The inmate was not in his cell, but three other inmates were present. Michaels testified that when she opened the door, she saw Simon Garcia, Christopher Meza, and Marqus Moya in the cell, and there was a smell of a burnt substance.

The three inmates were removed from the cell and moved to booking by another detention officer in order to be searched. When Michaels arrived in booking, Meza and Moya were sitting in chairs and Garcia was in a holding cell. Michaels went to turn off the water to the toilet in the holding cell, but before she could accomplish this task she heard the toilet flush.

Schankie also testified that as the officers walked into the cell, Meza was standing inside the cell against the wall, Moya was standing against the bed, and Garcia was standing right inside the door in front of the desk facing away towards Meza. Schankie testified that he saw Garcia set something on the desk and that he also smelled a burnt odor which, based on his training and experience, he associated with marijuana. The officers removed the inmates from the cell and began to pat them down. Schankie

2

testified that during this pat-down Meza dropped something on the ground that looked like a ball of tissue wrapped in plastic.

Schankie then took the inmates to booking and conducted strip searches of Meza and Moya. He testified that during the strip searches he witnessed a green tint on the tops of Meza's and Moya's tongues. Schankie stated that Michaels went to turn off the water to the toilet in the holding cell where Garcia was being held. However, before the water was shut off, Schankie saw Garcia spit something into the toilet, but he could not see what it was.

Detention Officer Caleb Rhodes assisted in patting down Moya and conducted the strip search of Garcia. Rhodes testified that Garcia complied with the search until he was asked to open his mouth. Rhodes stated that Garcia clenched his jaw shut and refused. Garcia was asked several times to open his mouth, but he just shook his head every time. He was then placed into a holding cell, and Rhodes asked to have the water in the cell turned off. Rhodes stated that as he turned away, he heard the toilet flush and turned back around just as Garcia was dropping something from his mouth into the flushing toilet.

Detention Officer Michael Wessell corroborated the detention officers' testimonies and stated that Schankie picked up and handed him the wadded-up piece of tissue covered in plastic on the floor, which Wessell then secured inside a latex glove. Upon entering the cell, he immediately recognized an odor of burnt marijuana. Wessel photographed items found in the cell, including what appeared to be a hand rolled marijuana cigarette on the desk and ashes and a plastic smoking device on the floor. Wessel had the items tested by the Kansas Bureau of Investigation (KBI) for THC.

Beth Royel, a KBI forensic scientist, testified that she analyzed two of the State's exhibits and detected THC in the exhibits. However, she was unable to classify the samples as marijuana because "KBI policy states that [KBI forensic scientists] can only

3

detect marijuana if [there is] vegetation and [the scientist] can see certain characteristics on that vegetation underneath the microscope. And, on this case, they were both residues, so we detect THC, which is the active ingredient in marijuana." On cross-examination, Royel acknowledged that THC can also exist in synthetic medical form and not be marijuana.

The detention administrator for the Lyon County Sheriff's office, Brian Anstey, testified that inmates are not allowed to possess marijuana or other illegal drugs. There are signs posted at the entrance of the jail with a large stop sign that lists illegal drugs as contraband. All inmates pass by the sign as they enter the jail unless they enter through the courthouse. In addition, this policy is in the rulebook given to inmates at their intake.

Shawn Alexander, the work release coordinator, testified that he saw what appeared to be a small, hand-rolled cigarette on the desk that appeared to be burnt and that there was an odor of marijuana in the cell. Alexander confirmed that he did not give Garcia consent to possess marijuana or any of its active ingredients. On cross-examination Alexander admitted that he did not know how Garcia entered the jail and whether Garcia saw the signs listing the contraband. Alexander also admitted there was no record of whether Garcia received a rulebook because the jail does not require a signed acknowledgment of receipt.

At the conclusion of this testimony, and outside the presence of the jury, the State moved to amend Count 1 of the complaint to conform with the evidence and add THC to the complaint. Defense counsel objected stating,

> "I do recognize that was the evidence of the KBI, but the evidence from the jail administrator says his policies are silent on THC, so we don't believe that Mr. Garcia or any other witness or any other inmate would have been put on notice that specifically THC was prohibited."

4

The court allowed the amendment.

Meza then testified for the State that Garcia came into his cell and asked if Meza and Moya wanted to get high. After Meza said yes, Garcia took a piece of toilet paper out of his waist band; it was a rolled joint. Meza stated he and Garcia began to smoke the marijuana out of a pipe, but Moya did not smoke. After less than 5 minutes, the jail staff came into the cell. Meza then testified that he entered into a plea agreement with the State for lesser charges and, as a part of that agreement, he agreed to testify. On cross-examination, Meza indicated that he pled to possession of tobacco and agreed to testify in exchange for the State's willingness to stand silent on two other charges in another case and a recommendation for concurrent sentences. Garcia's counsel then asked if Meza pled to a greater or lesser charge, prompting an objection from the State on grounds of relevance; the court overruled this objection. Meza could not recall if the possession of the tobacco charge was a greater or lesser offense. Garcia's counsel then asked if he knew "when you looked at the grid, what you have received had you been convicted of the tobacco—or the marijuana?" The State again objected to relevance, and this time the court sustained the objection.

Garcia testified in his own defense. He stated that he stopped by Meza's cell to look at some pictures Meza had received the previous day and, after a couple of minutes, the detention officers entered. Garcia testified that he never touched the marijuana cigarette or the pipe, but he refused to open his mouth during the strip search because he was mad and it was a "messed-up situation." He claimed he did not have anything to hide by not opening his mouth and that he had candy in his mouth, which was what he spit into the toilet. On cross-examination Garcia was asked if he knew the rules of the jail prohibited possession of marijuana or any kind of drug paraphernalia, to which he responded, "I never read it in a handbook because I was never given a rule book, but given the circumstance, yeah, I could say that, yes."

5

The jury found Garcia guilty of Count 1, trafficking contraband, marijuana or its active ingredient THC, in a correctional institution and not guilty of Count 2, trafficking contraband, a pipe, in a correctional institution. The district court imposed a 130-month prison sentence.

Garcia appeals.

WAS THERE SUFFICIENT EVIDENCE FOR THE JURY TO CONVICT GARCIA?

Garcia was convicted of traffic in contraband in a correctional institution in violation of K.S.A. 2011 Supp. 21-5914(a)(3). He presents two arguments challenging the sufficiency of the evidence. First, he argues that the statute under which he was convicted is too vague to withstand a constitutional vagueness challenge and, because it is vague, Garcia was entitled to notice of what was contraband under the statute. Second, he argues there was not sufficient evidence to prove that he received any notice that marijuana and THC were contraband items in the jail.

A.    *Is the Statute Unconstitutionally Vague*?

K.S.A. 2011 Supp. 21-5914(a)(3) states: "Traffic in contraband in a correctional institution or care and treatment facility is, without the consent of the administrator of the correctional institution or care and treatment facility[ ] any unauthorized possession of any item while in any correctional institution or care and treatment facility." Garcia argues that the language of the statute, which does not specifically define contraband, is unconstitutionally vague.

A challenge to the constitutionality of a statute is a question of law; thus, our review is de novo and unlimited. *State v. Bryan*, 259 Kan. 143, 145, 910 P.2d 212 (1996).

6

"The constitutionality of a statute is presumed, all doubts must be resolved in favor of its validity, and before the statute may be stricken, it must clearly appear the statute violates the constitution. . . . [I]t is the court's duty to uphold a statute under attack rather than defeat it, and if there is any reasonable way to construe the statute as constitutionally valid, that should be done. [Citation omitted.]

"'The test to determine whether a criminal statute is unconstitutionally vague and indefinite is whether its language conveys a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice. A statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process.' *State v. Huffman*, 228 Kan. 186, Syl. ¶ 5, 612 P.2d 630 (1980)." *State v. Watson*, 273 Kan. 426, 429, 44 P.3d 357 (2002).

In *Watson*, the Kansas Supreme Court addressed whether it was permissible to allow administrators of correctional institutions to determine what items were contraband by examining K.S.A. 2001 Supp. 21-3826, which is substantially similar to K.S.A. 2011 Supp. 21-5914, the statute at issue in the present case. The court held that so long as there were adequate safeguards in place, the legislature could vest "the administrators of correctional institutions with the authority to determine what items constitute contraband." 273 Kan. at 435. Thus, K.S.A. 2001 Supp. 21-3826 was found not to be unconstitutionally vague so long as administrators "provide persons of common knowledge adequate warning of what conduct is prohibited." 273 Kan. at 435. As K.S.A. 2001 Supp. 21-3826 is substantially similar to K.S.A. 2011 Supp. 21-5914, the latter is also not facially vague and is therefore constitutional.

B.     *Did Garcia Receive Adequate Notice of Items Classified as Contraband?*

Next Garcia argues that there was not sufficient evidence he received adequate warning that marijuana and THC were prohibited in the Lyon County jail and, therefore, his due process rights were violated.

> "When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. [Citation omitted.]" *State v. Lloyd*, 299 Kan. 620, 632, 325 P.3d 1122 (2014).

The detention center administrator testified that all inmates are advised in writing of jail policies, including the prohibited possession of contraband, during the book-in process. Inmates also are advised of the jail policy by large signs posted at the jail entrance points listing various items that are considered to be contraband. On these signs, illegal drugs are specifically listed as contraband. These signs also advise that anyone bringing contraband into the jail can be charged with a crime.

Although Garcia argues that the State did not prove he did in fact receive the written jail policies or saw the signs, when viewing the evidence in the light most favorable to the State, we conclude there was sufficient evidence for a reasonable juror to conclude Garcia was given proper notice. "[A] conviction of even the gravest offense may be sustained by circumstantial evidence." *State v. Dixon*, 279 Kan. 563, 621, 112 P.3d 883 (2005). First, Garcia himself testified that he knew possession of marijuana was not permitted in the jail. Second, the detention center administrator testified that all inmates were advised in writing of jail policies, including prohibited contraband, and that every inmate was provided a rulebook containing such policies. While it is true that

8

Garcia denied receiving a rulebook, the jury was not required to credit his testimony on this point.

### DID THE DISTRICT COURT ABUSE ITS DISCRETION BY ALLOWING THE STATE TO AMEND ITS COMPLAINT AFTER THE CLOSE OF EVIDENCE BUT BEFORE SUBMITTING THE CASE TO THE JURY?

Garcia argues that the district court violated his constitutional rights when it allowed the modification of the complaint from "marijuana in or upon the grounds of the Lyon County Jail" to "marijuana or any of its active ingredients, including [THC]."

A district court's decision to permit the State to amend a complaint is reviewed by an appellate court for an abuse of discretion. *State v. Holman*, 295 Kan. 116, 145, 284 P.3d 251 (2012). A district court abuses its discretion when taking an action that: (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012). However, "[t]he defendant bears the burden of establishing such an abuse of discretion." *Holman*, 295 Kan. at 145 (quoting *State v. Bischoff*, 281 Kan. 195, 205, 131 P.3d 531 [2006]).

Under K.S.A. 22-3201(e), the court may permit "a complaint or information to be amended at any time before a verdict if no additional or different crime is charged and if the substantial rights of the criminal defendant are not prejudiced." *State v. Ransom*, 288 Kan. 697, Syl. ¶ 11, 207 P.3d 208 (2009). Therefore, we must resolve two issues: "(1) Did the amendment charge an additional or different crime? and (2) Were the substantial rights of the defendant prejudiced by the amendment?" 288 Kan. at 715-16.

Here Garcia was not charged with a different crime when the district court allowed the amendment of the complaint. Garcia was originally charged with trafficking in

9

contraband in a correctional institution in violation of K.S.A. 2011 Supp. 21-5914(a)(3). After the evidence was presented, the district court granted the State's motion to amend the complaint from trafficking "marijuana in or upon the grounds of the Lyon County Jail" to trafficking "marijuana or any of its active ingredients, including [THC]." After this amendment Garcia was still charged with trafficking in contraband in a correctional institution in violation of K.S.A. 2011 Supp. 21-5914(a)(3).

Another panel of our court addressed the same issue in *State v. Lowe*, No. 110,103, 2015 WL 423664 (Kan. App.) (unpublished opinion), *rev. denied* August 20, 2015. In *Lowe*, the defendant was originally charged with trafficking in contraband under K.S.A. 2013 Supp. 21-5914(a)(1) (trafficking via introducing or attempting to introduce a contraband item to the correctional institution). At the close of the State's evidence, the State amended the charge to a violation of K.S.A. 2013 Supp. 21-5914(a)(3) (trafficking via possessing a contraband item within the correctional institution). The *Lowe* panel held that this was not a violation of Lowe's due process rights and that the amendment was permitted, stating:

> "In this case, the amendment didn't charge an additional or different crime. The amended information only changed the *theory* that would support the charge for trafficking in contraband in a correctional institution. And the State's amendment of a complaint to charge an alternative theory for committing the same crime is permitted under K.S.A. 22-3201(e), even if the new theory requires that the State prove different material elements. See *State v. Starr*, 259 Kan. 713, 720, 915 P.2d 72 (1996) (upholding the amendment of a first-degree murder charge from a felony-murder theory to a premeditated-murder theory, which required that the State prove an additional premeditation element). Thus, even though the amendment in this case changed the elements the State had to prove, the State did not charge a different crime, and our only question under K.S.A. 22-3201(e) is whether the amendment prejudiced Lowe's substantial rights." 2015 WL 423664, at *3.

Similarly, Garcia was not charged with a different crime. In fact, he was not even charged under a different subsection of the same crime. He was still charged under K.S.A. 2011 Supp. 21-5914(a)(3). The complaint was simply amended to account for the active ingredient in marijuana.

We next determine whether this amendment prejudiced Garcia's substantial rights.

"The test for prejudice is whether the defendant's challenge to the State's evidence would have the same bearing on the new information as it would have on the old one. 5 LaFave, Criminal Procedure § 3.6(b) (5th ed. 2009); see, *e.g.*, *State v. Price*, 940 S.W.2d 534, 537 (Mo. App. 1997) ('[T]he test for prejudice is whether a defendant's evidence would be equally applicable and his defense equally available.'). The test focuses on whether the amendment would introduce an element of surprise that would interfere with the defendant's ability to defend against the charge. See *Walters v. Gov't of Virgin Islands*, 172 F.R.D. 165, 170 (D.V.I.), *aff'd* 135 F.3d 764 (3d Cir. 1997) (interpreting Federal Rule of Criminal Procedure 7[e], which has nearly identical language to K.S.A. 22-3201[e]: 'Unless an additional or different offense is charged or a substantial right of the defendant is prejudiced, the court may permit an information to be amended at any time before the verdict or finding'); *United States v. Pelose*, 538 F.2d 41, 45 (2d Cir. 1976) (same); [*State v.*] *Starr*, 259 Kan. [713,] 721[, 915 P.2d 72 (1996)]; see, *e.g.*, *State v. Wade*, 284 Kan. 527, 535-36, 161 P.3d 704 (2007) (defendant's substantial rights prejudiced when a jury instruction effectively amended a complaint and turned the defendant's testimony at trial into an after-the-fact confession)." *Lowe*, 2015 WL 423664, at *3.

Other circumstances have been held not to interfere with a defendant's ability to defend against an amended complaint, such as when the evidence was the same under both the original information and the amendment, see *State v. Calderon-Aparicio*, 44 Kan. App. 2d 830, 849, 242 P.3d 1197 (2010), *rev. denied* 291 Kan. 913 (2011); when the defendant had always been aware of the evidence supporting the amendment, see *Holman*, 295 Kan. at 146 (upholding amendment to date of offense where defendant had

11

been aware that dates of offense were uncertain based on pretrial statements, preliminary hearing testimony, and testimony at trial), *Ransom*, 288 Kan. at 716; and when the defendant kept the same defense under the amendment, see *Calderon-Aparicio*, 44 Kan. App. 2d at 849 (upholding an amended information when "it would be difficult to ascertain how [the defendant] would have changed or modified his defense" to counter the elements required under the amendment), *State v. Ibrahim,* No. 106,953, 2013 WL 195516, at *11 (Kan. App. 2013) (unpublished opinion) (finding no prejudice "since [defendant's] defense would remain the same").

Here, the evidence was the same under both the complaint and the amended complaint; Garcia was always aware he was being charged with violating K.S.A. 2011 Supp. 21-5914(a)(3); and Garcia's defense—that he never possessed the hand-rolled cigarette and it was already in the cell when he entered—was the same after the amendment as it was before. Garcia was not prejudiced by the complaint's amendment.

Finally, Garcia argues that amendment of the complaint after the presentation of the State's evidence prejudiced him because the jurors could have already begun forming reasonable doubt in their minds. This argument is also without merit. Kansas appellate courts have generally permitted an amendment to a complaint that alters the charge to another crime under the same statute. In *State v. Dang*, No. 104,549, 2011 WL 5143139, at *6 (Kan. App. 2011) (unpublished opinion), *rev. denied* 294 Kan. 945 (2012), another panel of this court held that an amendment from possession of methamphetamine to possession of cocaine after the conclusion of the State's evidence was not reversible error because the late amendment did not charge Dang with a different crime.

Here, the amended complaint did not charge Garcia with a new crime. Moreover, the evidence remained the same as did Garcia's defense after the amendment. Garcia fails to persuade us how the district court abused its discretion by allowing the complaint to be amended.

12

Garcia argues that he should have been allowed to confront a witness about the sentence the witness was receiving in exchange for his testimony and that *State v. Davis*, 237 Kan. 155, 697 P.2d 1321 (1985), should be overruled.

"The credibility of an accomplice witness is subject to attack, and great leeway should be accorded the defense in establishing the witness' subjective reason for testifying. On the other hand, the propriety and scope of the examination lies within the sound discretion of the trial court." *State v. Sharp*, 289 Kan. 72, Syl. ¶ 8, 210 P.3d 590 (2009).

In *Davis*, our Supreme Court held that the district court did not abuse its discretion in limiting the defendant's cross-examination of an accomplice by excluding testimony as to the penalty provisions of the original charge and the penalty provisions of the reduced charge. 237 Kan. at 157-58. While the defendant was afforded an opportunity to inquire whether the accomplice had made any deal with the State, the district court held that inquiry into differences in penalty provisions would have allowed jury to hear the penalty the defendant would have received if found guilty and such facts would have detracted from the issue at hand for the jury. Similarly in *Sharp*, an accomplice testified at trial and was asked about his plea agreement with the State on cross-examination. The defense attempted to inquire as to the sentence the accomplice would receive, and the district court did not allow it. Our Supreme Court held the district court did not abuse its discretion because the jury had been informed that the witness had been charged with a lesser offense in exchange for his testimony. 289 Kan. at 99-100.

Garcia argues that *Davis* should be overturned, yet he fails to provide us with any indication that the Supreme Court is departing from its previous position in *Davis*. As we

13

are duty bound to follow the precedent established by our Supreme Court absent some indication the court is departing from its previous position, *Davis* is controlling here. See *State v. Ottinger*, 46 Kan. App. 2d 647, 655, 264 P.3d 1027 (2011), *rev. denied* 294 Kan. 946 (2012).

Here, there was no abuse of discretion in limiting the questioning of Meza. The court allowed Meza to be questioned regarding whether the offense was a lesser offense than the one to which he pled. The defense was allowed to inquire into the motivation Meza had for testifying. It was established that Meza had taken a plea deal that resulted in charges being dismissed in two different cases and that through this agreement Meza received a reduction in the potential sentence he would receive. The court drew the line at Meza's disclosure of the exact sentence. Garcia has failed to demonstrate how this limitation of the scope of the examination constituted an abuse of the district court's discretion.

WAS GARCIA DEPRIVED OF A FAIR TRIAL BY CUMULATIVE TRIAL ERROR?

Finally, Garcia argues that because of the numerous errors he claims were committed by the trial court, cumulative error resulted and necessitates reversal of his conviction. Unfortunately for Garcia, "'[c]umulative error will not be found when the record fails to support the errors raised on appeal by the defendant.'" *State v. Novotny*, 297 Kan. 1174, 1191, 307 P.3d 1278 (2013) (quoting *State v. Cofield*, 288 Kan. 367, 378, 203 P.3d 1261 [2009]). When the appellant fails to demonstrate "two or more trial errors not individually reversible, the cumulative error doctrine is inapplicable." *State v. Hilt*, 299 Kan. 176, 200, 322 P.3d 367 (2014). Because we find no errors in Garcia's conviction, there is no cumulative error here.

Affirmed.