NOT DESIGNATED FOR PUBLICATION

No. 112,878

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KENNETH RAY WHITE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; RICHARD ANDERSON, judge. Opinion filed March 25, 2016. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, and *Kyle Edelman*, assistant district attorneys, *Chadwick J. Taylor,* district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before PIERRON, P.J., BRUNS and GARDNER, JJ.

*Per Curiam*:  Kenneth Ray White appeals his conviction of criminal threat, alleging various errors during his jury trial. Finding no reversible error, we affirm.

*Procedural background*

On November 11, 2013, Jennifer Alcorn was working the overnight shift at a drugstore in Topeka. Sometime after midnight, Alcorn went outside to smoke a cigarette and White joined her. While Alcorn and White were talking, Steven Harrison rode up on

1

his bicycle, parked his bike, than started a heated discussion with White. Alcorn tried not to pay attention to their conversation, but she could tell they were saying some "nasty things" to each other. The only thing Alcorn could hear clearly was White saying to Harrison, "I've got this for you. I've got this for you."

According to Harrison, White approached him with a knife in each hand and told him that he had "this" for him when he came out. The knives were pointed in Harrison's direction. Harrison went into the store and told a worker to call the police, but the worker did not act quickly enough so Harrison called the police himself. When White saw that Harrison was on the phone, he ran from the store. Harrison followed.

While in pursuit, Harrison flagged down a police officer, described White, and told the officer what had happened. Officers soon found and arrested White at a nearby apartment, searched White, and found two knives on him. The State charged White with aggravated assault with a deadly weapon and criminal threat.

At the preliminary hearing, Harrison testified that he had been convicted of strong arm robbery and burglary in Missouri. It was later discovered that Harrison had other convictions in Missouri which he did not disclose during the preliminary hearing: theft; possession of a controlled substance other than marijuana; and assault.

The State filed a motion in limine asking the district court to prohibit any reference at trial to Harrison's crimes. The State conceded that the 2009 conviction for theft was a crime involving false statement or dishonesty, so it was admissible. But it argued the burglary conviction was inadmissible unless White could show the intent underlying the burglary conviction was dishonesty. The State argued that evidence of assault and drug possession were inadmissible under K.S.A. 60-421 and K.S.A. 60-422. The district court held that Harrison's prior convictions for burglary/stealing/robbery were admissible, but that his crimes of assault and drug possession were inadmissible.

2

At trial, during cross-examination defense counsel asked Harrison about his testimony at the preliminary hearing regarding his prior convictions. The State objected several times to defense counsel's questions, and the district court sustained those objections consistent with its prior rulings on the limine motion.

Harrison testified that while he recognized White as a panhandler who went by "K.D.," he did not have personal relationship with White and had not worked with him. White, on the other hand, testified that he had worked with Harrison at a temporary job agency and that the two had gotten into a fight a few months earlier over a cellphone. Whites admitted that he and Harrison had exchanged words outside the store, but he denied having had knives in his hands and claimed that the knives had remained in his pockets.

During direct examination, White also denied saying "I've got this for you," but he could not remember exactly what he said to Harrison in the heat of the moment. White assured the State during cross-examination that he did not have a hard time remembering what he said and that if he says something he remembers it. He admitted he had threatened Harrison, but he then again claimed he could not recall what he had said.

Ultimately, the jury found White not guilty of aggravated assault with a deadly weapon and its lesser-included offense of assault but guilty of criminal threat. The district court sentenced White to 14 months in prison, including 12 months of post-release supervision. White Timely appeals.

I. *Did the oath given to the jury violate White's right to due process?*

White first argues that the oath given to the jury was improper because it required the jurors to return a verdict and thus precluded the jury from disagreeing, being

3

impartial, or being hung. The oath stated:  "You do solemnly swear that you will try the case conscientiously and return a verdict according the law and the evidence?"

The record on appeal does not indicate that White objected during trial to the jury's oath. We must thus determine whether White has properly preserved this issue for appeal.

Generally, claims based on constitutional grounds cannot be raised for the first time on appeal. *State v. Bowen*, 299 Kan. 339, 354, 323 P.3d 853 (2014). Exceptions to this rule do exist. See *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014). But Supreme Court Rule 6.02(a)(5) (2015 Kan. Ct. R. & Annot. 41) requires an appellant to explain why such an issue should be heard for the first time on appeal. See *State v. Johnson*, 293 Kan. 959, 964-65, 270 P.3d 1135 (2012) White has not acknowledged his lack of preservation, addressed any of the exceptions, or explained why this court should consider his claim. As a result, we decline to review this issue. See *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014) ("[W]e are unwilling to ignore [Rule 6.02(a)(5)]'s plain language. Future litigants should consider this a warning and comply with Rule 6.02(a)(5) by explaining why an issue is properly before the court if it was not raised below—or risk a ruling that an issue improperly briefed will be deemed waived or abandoned.").

Further, Kansas caselaw requires a defendant to object to the jury's oath to preserve the issue for appeal. In *State v. Baldwin*, 36 Kan. 1, 6, 12 P. 318 (1886), the defendant argued, among other things, that the jury's oath "omitted the essential part of requiring that it should [give] a true verdict . . . according to the law and the evidence." In denying relief, the Supreme Court noted:

> "A still more conclusive answer on this point is, that no objection was made to the form of the oath when it was administered, or at any other time prior to its presentation in this court. If there was any irregularity in this respect it should, and probably would, have

4

been objected to at the time it occurred. . . . [I]f the form of the oath was defective the attention of the court should have been called to it at the time the oath was taken, so that it might have been corrected. A party cannot sit silently by and take the chances of acquittal, and subsequently, when convicted, make objections to an irregularity in the form of the oath." 36 Kan. at 7-8.

We find this case to be on point, as both *Baldwin* and this case challenge the oath's language. See *Baldwin*, 36 Kan. at 6. White cannot challenge on appeal the oath given to the jury because he did not object to it when it was given. See State v. *Dwigans* 51 Kan. App. 2d 790, Syl. ¶ 2, 356 P.3d 412 (2015), *petition for rev. filed* September 1, 2015; *State v. Hagan*, No. 112,096, 2015 WL 8175212, at *2 (Kan. App. 2015) (unpublished opinion), *petition for rev. filed* January 1, 2016.

*II. Did the district court err by prohibting White from impeaching Harrison?*

White next argues that the district court improperly excluded admissible evidence. White believes that he should have been allowed to address at trial Harrison's failure to disclose all his convictions at the preliminary hearing because it went towards witness credibility. He further argues that the exclusion of this evidence violated his constitutional right to a fair trial and to present his defense.

The admission of evidence is generally governed by the rules of evidence. K.S.A. 60-420 allows any party, including the party calling the witness, to introduce extrinsic evidence "concerning any conduct by him or her or any other matter relevant" for the purpose of attacking the witness' credibility. However, K.S.A. 60-421 states that evidence of a witness' conviction for a crime "not involving dishonesty or false statement shall be inadmissible for the purpose of impairing his or her credibility." Character evidence "other than honesty or veracity or their opposites" is also inadmissible. K.S.A. 60-422(c). So is evidence of specific instances tending to prove a witness' character traits. K.S.A. 60-422(d). The district court's ruling on the motion in limine attempted to follow these

statutes, generally permitting White to impeach Harrison with his crimes of dishonesty, but precluding White's impeachment with his other crimes. On appeal, we review the exclusion of evidence for an abuse of discretion. *State v. Dixon*, 289 Kan. 46, 69, 209 P.3d 675 (2009). A district court abuses its discretion when its action is "arbitrary, fanciful, or unreasonable." *State v. Jenkins*, 272 Kan. 1366, 1378, 39 P.3d 47 (2002).

White contends that the district court erred in not applying a caselaw exception to the rules of impeachment, as applied in *State v. Davis*, 237 Kan. 155, 160-61, 697 P.2d 1321 (1985). There, the district court prohibited the defense from impeaching a witness but the Kansas Supreme Court, relying on *State v. Nixon*, 223 Kan. 788, 576 P.2d 691 (1978), and *Dewey v. Funk*, 211 Kan. 54, 505 P.2d 722 (1973), held that credibility was a crucial factor in the case and the exclusion of the defense's proffered impeachment evidence was error. 237 Kan. at 160-61. But there, unlike here, the jury heard the false testimony; "the general rule for attacking a witness's credibility, K.S.A. 60-420, authorized the admission of the rebuttal testimony" and "the proffered testimony was not inadmissible under any subsection of K.S.A. 60-422." *Davis*, 237 Kan. at 161.

In *State v. Macomber*, 241 Kan. 154, 158, 734 P.2d 1148 (1987), the defense sought to impeach a witness by cross-examining him about his truthfulness at the preliminary hearing. Then, during cross-examination at trial, Fairchild was asked whether he had ever lied on the stand before and Fairchild replied that he had not. A proffer was then made, setting forth evidence that at the preliminary examination Fairchild had stated he was not under the influence of drugs and never used drugs; yet, two witnesses would testify Fairchild had in fact smoked marijuana on the way to the preliminary hearing and was involved in various drug transactions at the time of the hearing. Relying on *Davis*, *Nixon*, and *Dewey*, the Supreme Court found that the district court erred in excluding the impeachment evidence. 241 Kan. at 158-59. The court concluded: "[T]he appellant here introduced the evidence of Fairchild's drug use to show that Fairchild was not telling the truth in this case. Since Fairchild's testimony regarding the appellant's admission of

6

criminal activity was essential to the State's case, the trial court should have admitted the evidence showing the witness had testified falsely." 241 Kan. at 159.

We have stated that "*Macomber* and *Davis* stand for the proposition that when the credibility of a witness is 'a major factor in the outcome of the case,' it is error to exclude the evidence that would test the credibility of the witness after the witness has testified to some falsehood." *Swarthout v. State*, No. 93,133, 2005 WL 1138469, at *8 (Kan. App. 2005) (unpublished opinion) (citing *Davis*, 237 Kan. at 161). That is the proposition White seeks to apply here.

Here, however, White does not contend that the jury heard Harrison testify to any false statement, thus no evidence was presented for White to rebut. This distinguishes this case from *Davis, Macomber,* and that line of cases.

Further, unlike in *Davis*, *Macomber*, *State v. Beans*, 247 Kan. 343, 800 P.2d 145 (1990), and other cases White relies on, witness credibility was not necessarily the sole or crucial factor in the outcome of this case. Had the jury believed White's testimony, a conviction would nonetheless have been warranted. When the State specifically asked White if he had told Harrison that he something for him when he got out of the store, White replied, "Okay. I said that. Yes, I did say that." Harrison had testified that White told him that he had "this" for him, referring to the two knives. Harrison's account was also supported by what he told the responding police officers. Alcorn also testified that she heard White tell Harrison, "I've got this for you. I've got this for you." White's own testimony on cross-examination confirmed that account. So the facts of this criminal threat conviction do not present a scenario such as in *Beans*, a rape case where consent is the sole disputed issue and a conviction rests solely on the jury's determination of each party's credibility.

7

Lastly, the impeaching evidence is not as clear here as it was in the *Davis* and *Macomber* line of cases. Whether Harrison's failure to include all his prior convictions at the preliminary hearing was a product of his intent to deceive or merely innocent misrecollection has not been established. As the motion in limine stated, Harrison's robbery conviction occurred when he was 17 years old, and he was 43 at the time of the preliminary hearing. Thus the impeachment value of the excluded evidence was weaker than in the cases White cites.

In summary, we do not believe White was denied a fair trial because of his inability to impeach Harrison with the desired prior convictions. Nor do we believe that the district court abused its discretion in excluding the desired evidence. Nonetheless, we find this to be a close case.

Alternatively, in the event the district court erred in precluding the impeachment evidence, we find that error to be harmless. Even if Harrison had been impeached by a showing that he had intentionally omitted some of his prior convictions at the preliminary hearing and his testimony had been totally discounted by the jury, White could have been convicted based on his own trial testimony and Alcorn's, as summarized above. In light of the other evidence, we find the exclusion of evidence concerning statements Harrison made during the preliminary hearing did not affirmatively cause prejudice to White's substantial rights and does not require reversal. See *State v. Burnett,* 300 Kan. 419, 434, 329 P.3d 1169 (2014). *State v. Matson*, 260 Kan. 366, 379, 921 P.2d 790 (1996); *State v. Johnson,* 255 Kan. 140, 148, 871 P.2d 1246 (1994).

III. *Did the district court err by instructing the jury that a mistrial would be expensive and inconvenient?*

White next contends the district court gave an erroneous preliminary instruction to the jury, citing *State v. Salts*, 288 Kan. 263, 266, 200 P.3d 464 (2000). The instruction stated in part:

> "Any juror who violates these restrictions I have explained to you jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire process to— trial process to start over. As you can imagine, a mistrial is a tremendous expense and inconvenience to the parties, the Court and the taxpayers."

White acknowledges that he did not object to the instruction when it was given.

*A. Standard of Review*

Because White did not object, the clear error standard of K.S.A. 2015 Supp. 22-3414(3) applies. See *State v. Williams*, 295 Kan. 506, 510-12, 286 P.3d 195 (2012). To determine whether an instruction was clearly erroneous, appellate courts employ a two-step test. *State v. Longoria*, 301 Kan. 489, 512, 343 P.3d 1128 (2015). The first step is to determine whether any error occurred by considering whether the instruction was legally and factually appropriate, which is done with unlimited review. 301 Kan. at 512. The second step is to consider reversibility. To reverse, appellate courts must be "'firmly convicted that the jury would have reached a different verdict had the instruction error not occurred.'" 301 Kan. at 512 (quoting *Williams*, 295 Kan. 506, Syl. ¶ 5). The party claiming that the instruction was erroneous bears the burden of establishing prejudice. 301 Kan. at 512.

White argues that the clear error standard does not apply in this case, but he does not explain what standard of review should apply other than to state that this issue should

9

be reviewed on the merits. We find that the Supreme Court, when considering an argument similar to White's, recently applied the clear error standard of K.S.A. 22-3414(3). See *State v. Tahah*, 302 Kan. 783, 793, 358 P.3d 819 (2015), *writ for cert. filed* December 30, 2015. We shall do the same.

### B. Clear Error

The Kansas Supreme Court has recently upheld an instruction identical to the one challenged here. In *Tahah*, the court found *Salts* distinguishable because the instruction in that case was an *Allen*—type instruction, not a preliminary instruction. 302 Kan. at 794-95. The Court also stated that an instruction regarding the cost of a mistrial is an appropriate way for a district court to warn jurors about jury misconduct. 302 Kan. at 795. Ultimately, the Court held the cost of mistrial instruction was legally and factually appropriate in both the civil and criminal contexts. 302 Kan. at 795.

We have consistently applied *Tahah* to find no error in cases dealing with this issue. See, *e.g.*, *State v. Hachmeister*, No. 112,260, 2015 WL 8175905, at *8-10 (Kan. App. 2015) (unpublished opinion), *petition for rev. filed* December 12, 2015; *State v. Wasylk*, No. 112,128, 2015 WL 6833835, at *12-13 (Kan. App. 2015) (unpublished opinion), *petition for rev. filed* December 4, 2015; *State v. Davis*, No. 112,204, 2015 WL 6443466, at *1-4 (Kan. App. 2015) (unpublished opinion), *petition for rev. filed* November 18, 2015. White has not explained how this case is distinguishable from *Tahah*, and we see no distinction.

"The Court of Appeals is duty bound to follow Kansas Supreme Court precedent absent some indication the Supreme Court is departing from its previous position." *State v. Ruiz*, 51 Kan. App. 2d 212, 233, 343 P.3d 544 (2015). We have no indication the Supreme Court is departing from *Tahah*, so we find the district court did not err by giving the challenged instruction.

10

*IV. Did the State commit prosecutorial misconduct?*

Finally, White argues that the State's comments at trial were improper because the State impermissibly vouched for the credibility of a State's witness and improperly shifted the burden of proof to White.

White has not preserved any claim of prosecutorial misconduct relating to the State's cross-examination of him. Although White mentions the State's comments and questions during its cross-examination of him, he makes no argument about them in his brief. We therefore find that White has waived any prosecutorial misconduct claim regarding the State's comments during cross-examination. See *State v. Holman*, 295 Kan. 116, 142, 284 P.3d 251 (2012) (noting that an issue not argued and raised only incidentally is deemed abandoned).

White has preserved, however, his contention that the following comments, made during closing argument and rebuttal, constitute prosecutorial misconduct:

> "[Harrison] has no bias."

> "[I]t's no reason to believe that Mr. Harrison was not being honest and truthful when he gave that testimony."

> "Mr. Harrison's testimony is backed up, it's supported by evidence. His testimony is credible on that basis and his testimony established that Mr. White committed these crimes."

> "But more importantly, this question is about credibility, and like I was saying before, first of all, what would be Mr. Harrison's reasons to just completely make up this story?"

11

"And apparently, there are all these witnesses who said, yeah, I knew them when they worked together at Labor Pros and I was the one that saw Mr. Harrison punch Mr. White in the face, but you never heard any of that evidence."

"Now, the State is—the defendant does not have the burden of proof. State has the burden of proof."

*A. Standard of Review*

When questions of prosecutorial misconduct are raised, we apply a standard of review that consists of a two-step analysis. *State v. Crawford*, 300 Kan. 740, 744, 334 P.3d 311 (2014). First, we determine whether the comments constitute misconduct. 300 Kan. at 744. To be misconduct, the comments must fall "outside the wide latitude allowed in discussing the evidence." 300 Kan. at 744. If we find misconduct, we decide whether that misconduct compels reversal. 300 Kan. at 744-45.

*B. Vouching for Witness' Credibility*

Prosecutors should generally not provide their personal opinions on a witness' credibility. *State v. Stone*, 291 Kan. 13, 19, 237 P.3d 1229 (2010). The reason is that such opinions are "unsworn, unchecked testimony, not commentary on the evidence of the case." *State v. Pabst*, 268 Kan. 501, 510, 996 P.2d 321 (2000). But counsel may make comments that draw reasonable inferences from the evidence. *Stone*, 291 Kan. at 19. So prosecutors may "'explain[] to juries what they should look for in assessing witness credibility, especially when the defense has attacked the credibility of the State's witnesses.'" 291 Kan. at 19 (quoting *State v. Scaife*, 286 Kan. 614, 624, 186 P.3d 755 [2008]). A witness' credibility is ultimately determined by the jury. *State v. Davis*, 275 Kan. 107, 121, 61 P.3d 701 (2003).

12

Having reviewed the challenged comments in context, we find the State did not provide any personal opinion on the Harrison's credibility. Instead, it discussed the evidence and argued, that based on the evidence, Harrison's testimony was credible. For instance, the State argued: "Mr. Harrison's testimony is backed up, it's supported by the evidence. His testimony on that basis is credible and his testimony established that Mr. White committed these crimes." Although the State's comments might seem suspicious when isolated, prosecutors' statements must be viewed in context. *State v. Duong*, 292 Kan. 824, 831, 257 P.3d 309 (2011). We find the State's comments in this case were "within the context of an overarching evidence-based argument" that Harrison's testimony was credible. See 292 Kan. at 832.

We have considered *State v. Donaldson*, 279 Kan. 694, 709, 112 P.3d 99 (2005), and *State v. Johnson*, No. 92,951, 2006 WL 3589778 (Kan. App. 2006) (unpublished opinion), *rev. denied* 283 Kan. 932 (2007). In both cases, the prosecution made comments about police detectives who had testified, stating that they had no reason to lie. Those statements were found to be improper attempts to bolster the State's witness. *Donaldson* 279 Kan. at 709; *Johnson*, 2006 WL 3589778, at *18-20. White analogizes the comments made in *Donaldson* and *Johnson* to the State's comment in this case that rhetorically asked the jury what reason Harrison's would have to make up his story.

But we find our case distinguishable. First, the State's comment that White refers to was brief, unlike the statements in *Donaldson* and *Johnson*. See 279 Kan. at 709; 2006 WL 3589778, at *18. Second, in *Donaldson*, unlike here, the Supreme Court found that statements constituted misconduct partly because the prosecution told the jury the result of previous trials. 279 Kan. at 709. Third, prosecutors may ask rhetorical questions to probe "whether there was any motivation for the [witness] to lie." *State v. Ortega*, 300 Kan. 761, 777, 335 P.3d 93 (2014). We view the State's question here as such a question. Because this case is distinguishable from *Donaldson* and *Johnson* and because the State's

13

comments were made within the context of an evidence-based argument, the comments did not fall outside the wide latitude given to the State and were not improper.

C. *Shifting the Burden of Proof*

White's claim that the prosecutor improperly shifted the burden of proof is based on the State's asking the jury if the defense had presented evidence in support of its argument that Harrison and White already knew each other.

The prosecution may not "attempt to shift the burden of proof to the defendant or to misstate the legal standard of the burden of proof." *Stone*, 291 Kan. at 18. Prosecutors are granted considerable latitude in discussing the defense's weaknesses. 291 Kan. at 18. For instance, the prosecution may point out "a lack of evidence to support a defense or to corroborate a defendant's argument regarding holes in the State's case." *State v. Williams*, 299 Kan. 911, 940, 329 P.3d 400 (2014). But the prosecution may not ask rhetorical questions concerning whether any evidence was presented that the crime did not occur. See *State v. Tosh*, 278 Kan. 83, 90-92, 91 P.3d 1204 (2004).

Having reviewed the record, we find that the State did not shift the burden of proof to White. The defense's theory was that Harrison and White were already acquainted and that Harrison wanted to get White in trouble. The State merely mentioned that White had not provided any evidence supporting his assertion that two knew each other before the crime occurred. The statement "did not call upon the defense to disprove the occurrence of the crime." See *Williams*, 299 Kan. at 941 (citing *Tosh*, 278 Kan. at 92). The State's comment also came only during rebuttal, after the defense had argued that Harrison and White previously knew each other. Further, the State informed the jury that it had the burden of proof and that White did not. The court properly instructed the jury on who bore the burden of proof, mitigating any misconduct. See *State v. Crosby*, 293 Kan. 121, 137, 262 P.3d 285 (2011). Thus White's reliance on *Tosh* is misplaced.

14

Finally, the State did not brand White or defense counsel as liars. The prosecution may point out "a lack of evidence to support a defense or to corroborate a defendant's argument regarding holes in the State's case." Williams, 299 Kan. at 940. Doing so does not mean the prosecution is implying that the defendant or defense counsel are liars. For that reason and for the reasons already discussed, we find the State did not improperly shift the burden of proof to White, and its comments made during closing argument and rebuttal did not constitute prosecutorial misconduct.

Affirmed.