NOT DESIGNATED FOR PUBLICATION

No. 121,858

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ARTHUR W. DAVIS III,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Douglas District Court; AMY J. HANLEY, judge. Opinion filed May 7, 2021.
Affirmed.

*Arthur W. Davis III*, appellant pro se.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., MALONE, J., and MCANANY, S.J.

PER CURIAM: Arthur W. Davis III was convicted of aiding and abetting in the attempted first-degree murder of his former wife, Michelle Davis; aggravated kidnapping of Michelle; and contributing to a child's misconduct. These convictions were affirmed in *State v. Davis*, No. 103,873, 2011 WL 3795267 (Kan. App. 2011), and our Supreme Court denied review. Davis then sought relief by way of a K.S.A. 60-1507 motion. The district court summarily denied relief on a number of Davis' claims. The court held an evidentiary hearing on the remaining claims and found them to be without merit. Davis appeals the district court's rulings on his motion and also claims the district court originally imposed an illegal sentence.

1

We find that substantial evidence supports the district court's decision following the evidentiary hearing. We conclude in our de novo review of the remaining claims in Davis' K.S.A. 60-1507 motion that the motion, files, and records of the case conclusively establish that Davis is not entitled to relief. See *Beauclair v. State*, 308 Kan. 284, 293, 419 P.3d 1180 (2018). Finally, we find no merit to Davis' new claim that his original sentence was illegal. Accordingly, we affirm.

FACTUAL AND PROCEDURAL HISTORY

The events leading to Davis' convictions and to the present appeal center on a post-divorce dispute between Davis and Michelle over residential placement of their two minor children.

Briefly summarized, Davis and Michelle divorced in 1999. Michelle was granted primary residential placement of their two children. We will refer to the children in this opinion only as the son and the daughter.

In June 2007, Davis moved to change placement of the children and attached to his motion affidavits of the children in which they expressed their desire to live with Davis. That fall the son began living with Davis.

In the spring of 2008, the district court ordered a custody evaluation by Dr. Milford Dale. During the evaluation process, Davis and Michelle came to an agreement that their son should continue living with Davis, but they continued their dispute about their daughter's primary residential placement. Michelle wanted their daughter to continue living with her and Davis wanted her to live with him.

2

Dr. Dale's report was completed in June 2009. His recommendation was consistent with Michelle's desire: that the parties' 15-year-old son live with Davis and the parties' 13-year-old daughter live with Michelle. Dr. Dale reviewed his recommendation with Michelle. He then scheduled a separate meeting for Davis to review his recommendation two days later.

On June 12, 2009, Davis brought the two children with him for that meeting. Davis was given the report to read, and he shared it with the children. After reading the report Davis was angry. He took the two children and left. The daughter later testified that after the meeting Davis took the children to lunch and told them he wished they could get rid of Michelle by killing her.

A neighbor later testified that the following day, June 13, 2009, the son was seen using a baseball bat to hit a basketball in the bed of a pickup truck while Davis watched.

According to the trial testimony, two days later, on Monday, June 15, 2009, Davis met the children at Michelle's home at 5:30 p.m. and discussed with them how they were going to kill Michelle with the baseball bat. The plan was for the daughter to let the son into the house at 1 a.m. that night and the son would bludgeon Michelle to death with the baseball bat. Then Davis would arrive and they would call the police and report that the daughter killed Michelle in self-defense after Michelle attacked her. According to the daughter, this was one of five times they talked about the plan before it was executed.

The plan was executed at 1 a.m. that night. The son entered his mother's bedroom where she was sleeping and began striking her on the head with the baseball bat. The daughter came into the room, turned on the light, and told her brother and Michelle to stop. The son continued to struggle with Michelle. The daughter left but then returned a second time, Michelle pleaded with her to call 911. The son responded that he did not want to go to jail and told his sister to call

3

Davis. The daughter left but came back again, said that she did not know what to do, and put the phone on the bed. Michelle grabbed the phone, ran to the bathroom, and locked herself in as she called 911. The daughter later admitted at trial that at her brother's urging she too hit her mother with the bat before Michelle escaped to the bathroom.

When Davis arrived, he broke down the bathroom door and dragged Michelle out and held her and, as later testified to by the daughter, told his son to continue hitting Michelle with the bat, which the boy did. Davis' sandal prints were later found in Michelle's bathroom. Michelle broke free and ran to the kitchen where Davis caught and held her while the son again hit her on the head with the bat. Finally, Michelle escaped the house and ran to a police car with her son in pursuit.

The police took the son into custody. When the daughter tried to speak to the officer, Davis told her not to speak to anyone, and he led her back into the house. When they eventually came out of the house, neither would speak to the officers.

The daughter later told the police the prior-agreed story that she used the bat in self-defense when Michelle attacked her. But when separated from Davis she recanted this story, and Davis and the two children were charged. Prior to trial, the State granted the daughter immunity in exchange for her testimony against Davis and an agreement to reduce the charge against her brother to aggravated battery.

At trial, the State's charges against the son were still pending so he invoked his Fifth Amendment right not to testify. The daughter testified to five separate discussions with Davis about killing Michelle. These discussions took place over the weekend before the attack. Davis testified in his own defense. He denied having anything to do with the crime either as principal (swinging the bat) or as an aider or abettor. He denied

4

participating in the planning of the crime and asserted there was no plan between him and the children to murder Michelle. According to Davis, his daughter was solely responsible for the attack on Michelle, and that he and his son arrived that morning after his daughter phoned begging for help.

Davis was convicted on all charges and was sentenced to 310 months in prison. His convictions were affirmed on appeal in August 2011, and our Supreme Court denied review in February 2012. See *State v. Davis*, No. 103,873, 2011 WL 3795267 (Kan. App. 2011) (unpublished opinion).

Davis then moved for relief under K.S.A. 60-1507 based on a number of claims. After initially denying an evidentiary hearing on all of Davis' claims, and in response to a motion to alter or amend, the district court determined that the following issues were worthy of an evidentiary hearing: (1) whether Davis' trial counsel knew that premeditation was an element of attempted first-degree murder and (2) whether Davis was prejudiced by Greg Robinson, Davis' trial counsel, not informing him that premeditation was an element of attempted first-degree murder.

Davis testified at the evidentiary hearing that followed. According to Davis, he did not receive a copy of the charging document until after the trial was over. He testified that Robinson did not explain what he was charged with before the preliminary hearing. He claimed that Robinson never informed him of the elements of the crime, the concept of premeditation, Robinson's defense theory, Davis' trial rights, Robinson's plans for investigating the case, his proposed witnesses, the content of any filed motions, or even the trial date. According to Davis, he told Robinson that he was teaching tai chi on the evening of June 15, 2009, when one of the alleged conversations between him and his children took place. Davis contends that his tai chi students could testify that he could not have met that evening to plan the crime because of the class, thereby undercutting the

5

element of premeditation. But he acknowledged he never asked Robinson to call any of his tai chi students to testify as alibi witnesses at trial.

Robinson testified at the hearing that he had been practicing as a defense attorney since 1999. He stated that he had developed a pattern that he followed when meeting with clients. That pattern included discussing with the client the charges and the elements the State had to prove for a conviction. He stated that when he discussed the charges with Davis, the concept of premeditation would have come up. While the complaint did not specifically refer to premeditation, based on his experience in dealing with similar cases Robinson knew that premeditation was required. When premeditation was an issue, Robinson would give clients examples of "any overt acts, planning, things of that nature could be used as a basis to show the fact finder, the jury, that it was a premeditated and thought—a thoughtful or upon reflection type act." Robinson did not recall Davis ever asking him during the trial about premeditation. During the trial Davis never expressed any confusion over this element.

Robinson testified that the defense strategy was a "general denial of the allegations." This would have included the element of premeditation that the State would need to prove. The State proceeding on an aiding and abetting theory did not require him to change this strategy because the State, in any event, had to prove premeditation. He was aware that the State's case involved allegations of a plan between Davis and his children to kill Michelle, and as the case developed it became apparent that Davis' daughter was going to testify to a series of meetings with Davis and her brother about a plan to kill Michelle.

Robinson testified that he did not recall having a conversation with Davis about an alibi. He did not recall Davis telling him at trial that he could not have been at Michelle's house for the purported meeting to plan the murder because he was teaching a tai chi class at the time. Moreover, the two students whom Davis now claims could have

6

provided alibi testimony never told Robinson that Davis could not have been at the purported planning meeting because of the class. Had they done so, Robinson testified that he would have called them to testify.

The tai chi students were Donald Dorsey and Gail Underwood, husband and wife. They were good friends of Davis and had known him for many years. They maintained contact with Davis even after his conviction. Underwood had Davis' power of attorney and spoke on his behalf at the sentencing hearing. Underwood testified that she and her husband were in class with Davis the evening of the purported 5:30 planning meeting at Michelle's house between Davis and the children. Underwood and her husband would have arrived at around 5:40 for the 6:00 class. Davis was typically already there when they arrived. They did not leave the class until around 8 p.m.

Underwood attended the entirety of Davis' trial but did not tell Robinson that she had a class with Davis on the evening of the purported planning meeting when it came up during the testimony.

Dorsey provided testimony similar to that of Underwood.

The district court denied relief. In ruling on Davis' motion, the court found Robinson's testimony to be credible and that Davis' testimony "completely lack[ed] credibility." Likewise, the court found Underwood and Dorsey's testimony to be unpersuasive and "unreliable." The court noted that "Underwood and Dorsey never volunteered their memories about tai chi class until almost three years after Davis's trial."

The court found that Robinson understood the concept of premeditation as it applied to attempted first-degree murder in Davis' case and understood the requirement that the State prove premeditation. Robinson told Davis about premeditation, and

Robinson never expressed any confusion about this element. Moreover, there was no prejudice to Davis given the State's overwhelming evidence of premeditation.

Davis' appeal brings the matter to us.

ANALYSIS

*The District Court Did Not Err in Refusing to Grant Relief Following the Evidentiary Hearing on Davis' K.S.A. 60-1507 Motion.*

The issues before the district court at the evidentiary hearing were (1) whether Robinson, Davis' trial counsel, was ineffective in not knowing that the first-degree murder charge against Davis required proof of premeditation; and (2) whether Davis was prejudiced by Robinson not informing him that premeditation was an element of attempted first-degree murder.

*Standard of Review*

When the district court conducts a full evidentiary hearing on a K.S.A. 60-1507 motion, we review the district court's findings of fact to determine whether they are supported by substantial competent evidence and are sufficient to support the court's conclusions of law. We exercise de novo review over the district court's conclusions of law. *State v. Butler*, 307 Kan. 831, 853, 416 P.3d 116 (2018).

To prevail on an ineffective assistance of trial counsel claim, a defendant must establish (1) that the performance of trial counsel was deficient under the totality of the circumstances and (2) that the defendant was prejudiced, i.e., that there was a reasonable probability that the outcome would have been different absent the deficient performance. *Sola-Morales v. State*, 300 Kan. 875, 882-83, 335 P.3d 1162 (2014) (relying on

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 [1984]).

Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. The reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional judgment. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014).

*Robinson Knew That Attempted First-Degree Murder Required Premeditation.*

On this first issue Davis argues that Robinson "did not understand the nature of the charges, particularly the premeditation element of the charge, in this case." But the district court stated:

"At the hearing, Robinson repeatedly testified that he knew about the law of attempted first-degree murder, premeditation included. The Court finds this statement credible based on the following additional testimony given by Robinson; 1) he demonstrated the explanation of premeditation he used with defendants—an illustration he drew directly from case law; 2) he stated he knew that accomplices must share intent, including premeditation, with the principal; 3) he referenced his strategy for addressing the premeditation component and the various evidence that purportedly supported the State's theory of premeditation. Nothing in the record supports the allegation that Robinson did not understand that the State needed to prove premeditation. Accordingly, the Court finds and concludes Robinson knew about the premeditation element."

Davis cites *State v. Overstreet*, 288 Kan. 1, Syl. ¶ 3, 200 P.3d 427 (2009), wherein the court held that the "specific intent required to be proved for conviction on a premeditated first-degree murder charge is premeditation. Therefore, under K.S.A. 21-3205(1), a person guilty of aiding and abetting a premeditated first-degree murder must

be found, beyond a reasonable doubt, to have had the requisite premeditation to murder the victim." This was essentially a restatement of what was contained in K.S.A. 21-3205(1)—now K.S.A. 2020 Supp. 21-5210(a)—which states that "[a] person is criminally responsible for a crime committed by another if such person, acting with the mental culpability required for the commission thereof, advises, hires, counsels or procures the other to commit the crime or intentionally aids the other in committing the conduct constituting the crime." In order to prove that Davis was guilty of attempted first-degree murder under an aiding and abetting theory, the State was required to prove that Davis premeditated the crime and aided his son in its commission. See K.S.A. 2020 Supp. 21-5402(a)(1); K.S.A. 2020 Supp. 21-5210(a).

Robinson expressed familiarity with the concept of accomplice liability principles throughout his testimony. Robinson understood that Davis and his son both had to have premeditated the crime in order for Davis to be convicted.

Robinson approached the trial with a general denial defense. Davis now argues that a general denial defense was inappropriate and that Robinson relying on it demonstrates that Robinson did not understand that Davis was being charged under an aiding and abetting theory. But a general denial defense is a denial that the accused had anything to do with the crime. That is what Robinson argued throughout the case. Robinson's choice of defense was not merely a denial that Davis swung the baseball bat at Michelle; it was a denial that Davis had any involvement in the crime.

To that end, in closing argument Robinson pointed out that the State had not presented any text messages or other electronic messages about a plan to kill Michelle. Robinson argued that his daughter's testimony—a crucial portion of proving the plan existed—was "purchased." While there could be premeditation without the extensive planning Davis' daughter testified to, the multiple meetings she testified to presented solid evidence of mutual premeditation between Davis and his son to kill Michelle.

10

It is clear that Robinson was aware of, and argued against, the aiding and abetting portion of the charges in his defense of Davis. We find substantial competent evidence to support the district court's finding that Robinson understood that premeditation was required in order to convict Davis of attempted first-degree murder.

*Robinson Informed Davis That Premeditation Was an Element of Attempted First-Degree Murder and, Therefore, Davis Was Not Prejudiced by Robinson's Claimed Failure to Do So.*

The district court found that Robinson's testimony on this issue was credible and that Davis' testimony was unsupported by the record and was not credible. When considering whether substantial evidence supports a finding by the district court, we do not substitute on appeal our own view on matters of credibility for that of the district court. Rather, we view the evidence in the light favoring the State, the prevailing party in these proceedings. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

The district court recounted Robinson's testimony that supported the finding that Robinson explained the concept of premeditation to Davis. As the district court explained, Robinson testified that he had a pattern of discussing the elements of the crimes his clients were charged with during their first meeting. While he did not specifically remember doing so with Davis, he was confident that he would have discussed with Davis the elements of first-degree murder—including premeditation. The district court found that Robinson told Davis about the element of premeditation. Viewed in the light favoring the State, the prevailing party, there is substantial evidence in the record to support this finding, and we find no basis for disturbing it on appeal.

Davis' claim of prejudice from Robinson not calling Dorsey and Underwood to testify as alibi witnesses is predicated on a finding that Robinson failed to informed Davis about the element of premeditation. But because the evidence supports a contrary

11

finding—that Robinson informed Davis about premeditation—we need not address the issue of prejudice.

Besides, the district court found that Davis's testimony at the 1507 hearing was not credible and that the testimony of Davis' longtime close friends, Underwood and Dorsey, was not reliable. Moreover, as the court explained, the evidence of guilt was overwhelming, obviating any possibility that the outcome of the trial would have been any different had Underwood or Dorsey testified about one of several meetings at which there was testimony that Davis planned Michelle's murder.

The district court did not err in denying relief on the issues addressed at the evidentiary hearing on Davis' K.S.A. 60-1507 motion.

*The District Court Did Not Err in Summarily Dismissing Without an Evidentiary Hearing the Remainder of Davis' K.S.A. 60-1507 Claims.*

*Standard of Review*

When presented with a K.S.A. 60-1507 motion the district court has three options:

"'"(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing."' [Citations omitted.]" *White v. State*, 308 Kan. 491, 504, 421 P.3d 718 (2018).

When the district court summarily dismisses a K.S.A. 60-1507 motion, we review the matter de novo to determine whether the motion, files, and records of the case

12

conclusively establish that the movant is not entitled to relief. *Beauclair*, 308 Kan. at 293. We conduct this same type of review when the district court summarily dismisses some, but not all, of a defendant's claims.

*Isolated claims*

Davis argues the district court incorrectly isolated his claims against counsel and did not consider the cumulative impact of the alleged errors. The effectiveness of counsel's assistance should be gauged by the totality of the representation and not by isolated consideration of specific instances of conduct. See *Chamberlain v. State*, 236 Kan. 650, 652-63, 694 P.2d 468 (1985). But the district court is entitled to separate the wheat from the chaff by dismissing claims that the record shows clearly lack merit before considering any potentially meritorious claims. See *White*, 308 Kan. at 504. The record shows that the district court did so here. The district court considered Davis' ineffective assistance of counsel claims and found them lacking. There is no indication that the court decided the matter by considering claims in isolation without considering the overall impact of counsel's conduct on Davis' right to a fair trial.

*Inadequate findings of fact and conclusions of law*

Davis argues that the district court failed to provide sufficient findings of fact and conclusions of law to support its decision. Under Kansas Supreme Court Rule 183(j), the district court "must make findings of fact and conclusions of law on all issues presented" in a K.S.A. 60-1507 motion. (2021 Kan. S. Ct. R. 240.) Compliance with the Rule enables an appellate court to conduct a meaningful review. *State v. Moncla*, 269 Kan. 61, 65, 4 P.3d 618 (2000).

The district court summarily dismissed several of Davis' claims without providing detailed findings of fact or conclusions of law. The question for us is whether we can

13

conduct a meaningful review under these circumstances. We conclude that we can. Because our review is de novo we follow the same procedure applicable to the district court: we must consider with respect to each of Davis' claims whether the motion, files, and records of the case conclusively show that Davis is not entitled to relief. K.S.A. 2020 Supp. 60-1507(b). If so, then we affirm the district court on that issue. If not, we can remand to the district court for further proceedings on that issue.

*Davis' Claims*

To obtain relief under K.S.A. 60-1507, Davis had to establish by a preponderance of the evidence either (1) the judgment was rendered without jurisdiction, (2) the sentence imposed was not authorized by law or is otherwise open to collateral attack, or (3) there has been such a denial or infringement of his constitutional rights so as to render the judgment vulnerable to collateral attack. See K.S.A. 2020 Supp. 60-1507(b); Supreme Court Rule 183(g) (2021 Kan. S. Ct. R. 239).

In his K.S.A. 60-1507 motion, Davis referred to his attached memorandum for his grounds for relief and the facts and witnesses he relied upon to support such grounds. Davis' memorandum in support of his K.S.A. 60-1507 motion consists of 72 pages followed by a 3-page explanation of his actual innocence, followed by 13 pages that appears to be a summary of various arguments raised in the memorandum. He also attaches the affidavits of Underwood and Dorsey.

Davis' initial claim is that the charging document was fatally defective and deprived the district court of jurisdiction over the charge of attempted first-degree murder. At page 34 of this 72-page memorandum Davis first makes any reference to the performance of his counsel when he states, with regard to his claim that he was prejudiced by pretrial publicity, that neither the court, the prosecutor, or defense counsel

14

examined each juror about their knowledge of the facts of the case. Davis asserts that his counsel should have known of the prejudicial community atmosphere Davis faced.

Davis' next criticism of his counsel is found on page 40 of his memorandum where he notes that his trial counsel "never mentions [Davis'] whereabouts in reference to 5:30 p.m. in opening [statement]." This relates to Davis' claim that he had alibi witnesses that would place him elsewhere when his daughter testified that she and Davis and her brother met to plan Michelle's murder. This, of course, relates to an issue that the district court considered at the evidentiary hearing on Davis' claims.

The first time Davis is critical of appellate counsel is on page 51 of his memorandum where he states that the State's witness coaching "admitted at trial by the witness should have been raised on direct appeal. . . . The failure to raise these issue[s] and the ineffective of counsel issue in failing to secure alibi witnesses . . . is a mockery of justice." Davis continues, "For all the grounds stated above, appellate counsel was ineffective for failing to raise these dead bang winners."

At page 67 Davis argues that the evidence was insufficient to convict him of aggravated kidnapping because "there was no act of holding separate from a general attack of aggravated battery." After setting forth his arguments on this claim he states that "trial counsel was ineffective for the claims stated above." More specifically, trial counsel (1) failed "to request PIK Crim. 3d 52.18 as [Davis'] testimony was not to be on the same plain as [other] witnesses testimony as she is an accomplice." (2) He failed "to put before the jury and instruction on defenses theory." (3) And he "[f]ailed to contact or investigate alibi witnesses, including a plethora of other structural errors."

In between these portions cited above, Davis gives essentially a blow-by-blow description of major sections of the trial and describes all his claimed trial errors by the district court, the evidence that he claims was improperly admitted, the objections of

15

defense counsel that he claims were improperly overruled, and the conduct of the prosecutor which he claims was improper, all of which could have been raised in Davis' direct appeal if they were worthy of being asserted rather than being collaterally raised for the first time by way of this K.S.A. 60-1507 motion. See *Bruner v. State*, 277 Kan. 603, 607, 88 P.3d 214 (2004) (noting that alleged trial errors generally must be addressed on a direct appeal); Supreme Court Rule 183(c)(3) (2021 Kan. S. Ct. R. 239). Moreover, he spends considerable ink on matters of witness credibility, all of which the jury resolved against him and none of which are subject to review in these proceedings. See *Chandler*, 307 Kan. at 668; *Drach v. Bruce*, 281 Kan. 1058, 1067, 136 P.3d 390 (2006).

It its May 30, 2014 decision, the district court was able to reframe Davis' complaints into the following claims. We will take them up in the order set forth by the district court in its May 30, 2014 decision.

*The Charging Document*

First, Davis contends that the charging document was fatally defective, divesting the district court of jurisdiction over the charge of attempted first-degree murder. The district court characterized Davis' criticism of the charging document as a contention that his trial counsel was ineffective for failing to argue that it was defective because the charge of attempted first-degree murder did not include the words "intentionally and with premeditation." The amended information stated:

> "That on or about the 16th day of June 2009, in Douglas County, Kansas one Arthur W. Davis III, did then and there unlawfully and feloniously commit an overt act, to wit: struck Michelle Davis repeatedly with baseball bat, toward the perpetration of the crime of Murder in the First Degree, as defined by K.S.A. 21-3401(a) with the intent to commit said crime but failed in the perpetration thereof or was prevented or intercepted in executing said crime, all in violation of K.S.A. 21-3301. (Attempted Murder in the First Degree, Level 1/Person/Felony)."

16

The record shows that Robinson did not move to arrest judgment, and the State concedes that Robinson did not claim the information was defective, so there is no need for an evidentiary hearing on this issue. The question for us is whether, as a matter of law, Davis has an actionable claim of ineffective assistance of counsel regarding the charging document.

Contrary to Davis' argument, the claimed defect in the charging document did not deprive the district court of jurisdiction. In *State v. Dunn*, 304 Kan. 773, 811, 375 P.3d 332 (2016), overruling the court's prior holding in *State v. Minor*, 197 Kan. 296, 416 P.2d 724 (1966), our Supreme Court stated:

"Charging documents do not bestow or confer subject matter jurisdiction on state courts to adjudicate criminal cases; the Kansas Constitution does. Charging documents need only show that a case has been filed in the correct court, *e.g.*, the district court rather than municipal court; show that the court has territorial jurisdiction over the crime alleged; and allege facts that, if proved beyond a reasonable doubt, would constitute a Kansas crime committed by the defendant."

To prevail on a claim of ineffective assistance of counsel, Davis must establish not only that the performance of his counsel was deficient but also that he was prejudiced thereby. See *Sola-Morales*, 300 Kan. at 882-83. Davis claimed that Robinson's ignorance of premeditation being an element of attempted first-degree murder resulted in him failing to challenge the amended information for this deficiency and in him failing to call Underwood and Dorsey as alibi witnesses to undercut the notion of premeditation. But, as the district court found and as we discussed earlier, Robinson knew and understood that the State was required to prove premeditation, and Robinson explained that to Davis. Davis and Robinson clearly understood what the State had to prove for a conviction. Even if the charging document was deficient for not referring to premeditation, Davis and Robinson had all the necessary information with which to mount a defense, and Robinson

17

did so, albeit unsuccessfully in the face of the compelling evidence presented by the State. See *Dunn*, 304 Kan. at 821. Likewise, for these reasons, had Robinson moved to arrest judgment following the jury's verdict, the district court correctly would have denied it.

As for the claim that Robinson should have called Underwood and Dorsey, the district court found at the evidentiary hearing that the testimony of these witnesses, who were longtime personal friends of Davis, was unreliable and would not have affected the outcome of the trial, given the fact that they could testify to only one of several meetings in evidence during which Michelle's murder was planned. Moreover, as to the timing of the Monday afternoon meeting, the district court found that the testimony of Underwood and Dorsey did not eliminate the possibility of Davis conducting their tai chi class and still attending the afternoon meeting with the children. The records of the case demonstrate that Davis cannot establish the necessary element of prejudice.

Davis also contends that the use of the disjunctive "or" in the amended information ("failed in the perpetration thereof or was prevented or intercepted. . .") led to impermissible uncertainty which Robinson should have challenged. We find no merit to this claim. Davis relies on *State v. Seeger*, 65 Kan. 711, 711, 70 P. 599 (1902), in which the complaint charged the defendant with maintaining

> "'a place where intoxicating liquors are kept for sale, sold, bartered, or given away in violation of law, or where persons are permitted to resort for the purpose of drinking intoxicating liquors as a beverage, or where intoxicating liquors are kept for the purpose of sale, barter, or delivery in violation of law, or a place where intoxicating liquors, bottles, glasses, kegs, pumps, bars, and other property are kept and used in maintaining such place.'" 65 Kan. at 711.

18

The court held that the complaint lacked certainty in that no one could tell if the defendant was being charged with maintaining a liquor warehouse or a bar. 65 Kan. at 711.

In *State v. Woods*, 222 Kan. 179, 181, 563 P.2d 1061 (1977), the Kansas Supreme Court had to determine whether the language "'which did inflict great bodily harm upon the [victim], or which was done in a manner whereby great bodily harm or disfigurement could have been inflicted'" ran afoul of the rule in *Seeger*. The court held that it did not because, generally, the use of the disjunctive is fatal only when uncertainty results. The court held that the use of the disjunctive was permissible in *Woods* because there was no uncertainty. 222 Kan. at 183.

The same can be said about Davis' case. The disjunctive used in the charging document merely related to the Davis' failure to complete the act of first-degree murder. It was his failure to complete the crime that was the operative fact, not that his failure was due to having been prevented or having been intercepted. Neither Davis nor his trial counsel was left in doubt as to what Davis was charged with having done. The use of the alternative "or" was totally inconsequential when it came to Davis' defense to the charge. See *Woods*, 222 Kan. at 182-83.

Accordingly, we conclude as a matter of law that the district court did not err in summarily denying relief on this claim regarding the charging document.

*The Sufficiency of the Evidence of Attempted First-Degree Murder*

Second, Davis appears to argue that his appellate counsel was unable to argue on appeal that the evidence presented at trial was insufficient to convict him of attempted first-degree murder due to trial counsel's failure to expose false testimony by the State's witnesses and failure to file a notice of an alibi defense.

19

The false testimony apparently relates to the daughter's testimony about the Monday evening meeting between Davis and the children about attacking Michelle later that night. Davis claims his daughter was coached to say that he wanted to have Michelle killed, rather than simply to "get rid" of her. But the jury heard recordings of the daughter's statements which used these phrases and could decide for themselves the import of the daughter's statements.

Davis also complains that he was unable to counter his daughter's testimony with that of his son because his son had asserted his Fifth Amendment right against self-incrimination. In summarily denying this claim, the district court found that the son's refusal to testify was not a violation of Davis' rights. We find no error in this conclusion. Moreover, Davis did testify on his own behalf and refuted his daughter's claim about the Monday evening meeting.

As to the alibi issue, Davis testified at trial that he could not have participated in the claimed Monday afternoon meeting to plan the murder because he was teaching a tai chi class at the time. Underwood and Dorsey had not been called to testify at trial about the Monday tai chi class to support Davis' testimony. But the lack of their alibi testimony did not prevent appellate counsel from challenging the sufficiency of the evidence. As we discussed earlier, had Underwood and Dorsey testified at trial their testimony would not have materially affected the outcome of the trial. Moreover, had they testified, their testimony would not have been sufficient to undercut on Davis' direct appeal the sufficiency of the evidence supporting Davis' attempted first-degree murder conviction.

*Premeditation and Robinson's Failure to Call Underwood and Dorsey as Alibi Witnesses*

Davis' third claim relates to the claim already discussed above that trial counsel did not understand that premeditation was an element of attempted first-degree murder and that counsel's failure to inform Davis about premeditation prejudiced Davis by Underwood and Dorsey not being called to testify as alibi witnesses. We need not address this issue further.

*The Court's Instructions on Attempted Second-Degree Murder and Voluntary Manslaughter*

Fourth, Davis argues that his trial and appellate counsel failed to challenge the court's instructions on attempted second-degree murder and voluntary manslaughter. This issue was thoroughly discussed in the district court's May 30, 2014 decision. We need not repeat here all of the district court's analysis. We do note, however, that the district court acknowledged that it erred by not providing a proper lesser included instruction. But that error does not require reversal. The Kansas Supreme Court has held that "when a defendant has been charged with and convicted of murder in the first degree, the correctness of instructions relating to manslaughter becomes immaterial." *State v. Metcalf*, 203 Kan. 63, 67, 452 P.2d 842 (1969). Consistent with *Metcalf*, the court later stated in *State v. Horn*, 278 Kan. 24, 43, 91 P.3d 517 (2004), *overruled on other grounds by State v. Neighbors*, 299 Kan. 234, 328 P.3d 1081 (2014), that when a court gives instructions for first- and second-degree murder, but fails to include further lesser included offenses, and the jury convicts on the greater offense, any error resulting from the failure to include additional lesser included offenses is cured.

The district court provided first- and second-degree murder instructions in this case. The failure to include further lesser included offense instructions was cured when the jury convicted Davis of attempted first-degree murder. See *Horn*, 278 Kan. at 43.

21

Given the extent of the evidence supporting Davis' conviction of attempted first-degree murder, the failure of Davis' trial counsel to challenge these instructions would not have affected the outcome of the case, and appellate counsel was not ineffective for failing to raise this issue on appeal.

Finally, Davis seems to argue at some point that by including lesser included offense instructions to the jury, the district court thereby acquitted him of the greater crime. Davis clearly misunderstands the law regarding lesser included offense instructions. Lesser included instructions are provided to the jury by the district court if there is "'some evidence which would reasonably justify a conviction of some lesser included crime.'" *State v. McLinn*, 307 Kan. 307, 324, 409 P.3d 1 (2018).

Essentially, lesser included instructions should be provided if there is some evidence, when viewed in a light most favorable to the defense, that would allow the jury to convict the defendant of the lesser crime. This does not mean that the jury is precluded from convicting the defendant of the primary offense so long as there is substantial evidence to support the jury's choice.

*The Court's Instruction on General Intent*

Fifth, Davis contends that his trial and appellate counsel were ineffective for failing to challenge the court's general intent instruction. He argues that the jury was instructed on general and specific intent when none of the crimes charged was a general intent crime.

Davis was charged with contributing to a child's misconduct, which is a general intent crime. See K.S.A. 21-3612(a) (now K.S.A. 2020 Supp. 21-5603). Thus, a general intent instruction was appropriate as it relates to that crime. Moreover, the district court instructed the jury in Instruction No. 5: "Each crime charged against the defendant is a

22

separate and distinct offense. You must decide each charge separately on the evidence and law applicable to it, uninfluenced by your decision as to any other charge." It is clear from the record that it was not error to provide a general intent instruction under the circumstances, and Davis' trial and appellate counsel were not ineffective in failing to challenge this instruction.

*Lesser Included Crimes of Kidnapping and First-Degree Murder*

Sixth, Davis contends his trial and appellate counsel were ineffective for failing to argue that the district court should have instructed the jury that criminal restraint is a lesser included crime of kidnapping and that aggravated battery is a lesser included crime of first degree murder.

On the first issue, Davis was charged with aggravated kidnapping. The court instructed the jury on the elements of aggravated kidnapping and ordinary kidnapping. At the time, the crime of kidnapping was defined as "the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person . . . to inflict bodily injury or to terrorize the victim or another." K.S.A. 21-3420(c). Aggravated kidnapping is defined as the same, except that it requires bodily harm to be inflicted upon the person kidnapped. K.S.A. 21-3421. Ordinary kidnapping is a lesser included offense of aggravated kidnapping. *State v. Corn*, 223 Kan. 583, 591, 575 P.2d 1308 (1978). Likewise, criminal restraint is a lesser included offense of kidnapping and could have been included as a lesser included offense instruction in this case. See *State v. Carter*, 232 Kan. 124, 126-27, 652 P.2d 694 (1982). As the district court noted in its May 30, 2014 decision, "[h]ad the jury found Davis guilty of kidnapping, he could contend that the criminal restraint instruction should have been given." But any error in not including the criminal restraint instruction was cured when the district court provided jury instructions for aggravated kidnapping and its "only lesser offense, kidnapping" and the jury convicted Davis of aggravated kidnapping. *State v. Horn*, 278 Kan. 24, 43, 91 P.3d

23

517 (2004). Davis suffered no prejudice from the court's failure to instruct on criminal restraint.

On the second issue, aggravated battery is not a lesser included offense of attempted murder. *State v. Gaither*, 283 Kan. 671, 692, 156 P.3d 602 (2007).

There was no need for an evidentiary hearing to determine that Davis' trial and appellate counsel were not ineffective in failing to raise these issues.

*Pretrial Publicity*

Seventh, Davis contends his trial and appellate counsel failed to assert that Davis was denied a fair trial because pretrial publicity tainted the jury pool and trial counsel was also inadequate in failing to adequately question prospective jurors about their impartiality.

The State and Davis' counsel participated in voir dire and questioned prospective jurors about their knowledge of the case. In some instances, prospective jurors expressed an inability to put aside their prior knowledge and opinions about the case and were excused for cause. Others explained that they had heard about the case but could set aside any preconceptions about it and decide the case solely on the evidence presented in court.

Davis does nothing more than make conclusory accusations that he was prejudiced by media coverage of the attack on Michelle. He offers no evidence that members of the jury were actually prejudiced against him based on any pretrial knowledge of the events. Nor was his counsel ineffective for not objecting to the jury panel merely because the crime was covered in the local news media. See *State v. Jackson*, 262 Kan. 119, 128-29, 936 P.2d 761 (1997) (noting that the defendant has the burden to show a demonstrable

24

prejudice against defendant exists within the community and that it is reasonably certain that he will not receive a fair trial).

Davis fails to provide any evidence that the jury pool was prejudiced against him or that his counsel was ineffective for failing to argue that the jury pool was prejudiced against him. Davis is not entitled to relief on his motion based on this claim.

*False Testimony and Davis' Alibi Defense*

Eighth, Davis' trial counsel failed to expose false testimony of the State's witnesses and failed to file a notice of alibi defense. We discussed these claims at length earlier in this opinion. We need not address them further.

*Failures of Appellate Counsel*

Nineth, Davis contends that his appellate counsel "failed to raise each issue set forth in Davis' 1507 motion." Among Davis' various complaints is the claim that his appellate counsel was ineffective for failing to raise on appeal the issue of possible coaching of his daughter while she testified at trial. But Davis' appellate counsel did raise this issue on appeal and it was extensively discussed in the appellate opinion. *Davis*, 2011 WL 3795267, at *6-8.

We have addressed all the other various instances in which Davis finds fault with his appellate counsel and have found Davis' criticisms lacking in merit. Besides, the decision by appellate counsel to not raise an issue does not necessarily amount to ineffective assistance of counsel. As the Kansas Supreme Court has stated, "[c]onscientious counsel should only raise issues on appeal which, in the exercise of reasonable professional judgment, have merit." *Baker v. State*, 243 Kan. 1, 10, 755 P.2d

493 (1988). The record does not disclose any issue of merit that if raised on appeal could have resulted in a more favorable outcome for Davis.

*Michelle's 911 Call*

Tenth, Davis contends that his trial counsel was ineffective in failing to object at trial to the admission of Michelle's 911 call. He contends that the recording of the call had been altered. But his trial counsel objected to the altered version being admitted into evidence, and the district sustained the objection. Instead, the original unaltered recording was admitted and played to the jury. Davis also argues that the State utilized the altered tape during closing arguments but presents no evidence that the State actually did so. This claim does not merit an evidentiary hearing. The record shows that Davis is not entitled to relief on this claim of ineffective assistance of counsel.

*Sufficiency of the Evidence of Aggravated Kidnapping*

An issue not specifically addressed by the district court in its May 30, 2014 ruling is Davis' claim that there was insufficient evidence to support his aggravated kidnapping conviction and that his trial and appellate counsel were ineffective for failing to raise this claim.

In Davis' direct appeal, this court noted: "Davis challenges the sufficiency of the evidence to support an aggravated battery conviction; however, we note that his arguments all concern his aggravated kidnapping conviction." *Davis*, 2011 WL 3795267, at *8. The issue was clearly raised in Davis' direct appeal. This court specifically found that there was sufficient evidence to support Davis' conviction. In reciting the facts of the case, the court noted:

"After Michelle managed to lock herself in the bathroom, Davis broke through the door, dragged Michelle into the hallway, held her by the arms, and yelled at [the son] to hit her. [The son] complied by twice hitting Michelle on the head with the bat. When Michelle managed to escape Davis' grasp, Davis pursued her into the kitchen, grabbed and held her while [the son] again struck her head with the bat." 2011 WL 3795267, at *9.

To be found guilty of aggravated kidnapping the State was required to prove that Davis committed the offense of "taking or confining [Michelle], accomplished by force, threat or deception, with the intent to hold such person: . . . to inflict bodily injury or to terrorize the victim or another" and in doing so bodily harm was inflicted on the person kidnapped. K.S.A. 21-3420; K.S.A. 21-3421. There was ample evidence presented at trial to support Davis' conviction of aggravated kidnapping. Davis forcefully restrained Michelle in the bathroom and again in the kitchen so that their son could strike her with the baseball bat, which he did. Davis' trial and appellate counsel were not ineffective in failing to raise this issue.

Davis fails to establish that under the totality of the circumstances his trial and appellate counsel were ineffective in representing him at trial and on appeal or that he was prejudiced by their performance. See *Beauclair*, 308 Kan. at 293; *Sola-Morales*, 300 Kan. at 882. He also fails to show a denial of constitutional rights that deprived him of a fair trial. In our de novo review we conclude that the motion, files, and case records conclusively show that Davis is not entitled to relief on his motion and the district court did not err in summarily denying relief.

*The District Court Did Not Impose an Illegal Sentence for Attempted First-Degree Murder When Davis Should Have Been Sentenced for Domestic Battery*

For Davis' final issue on appeal, he argues that the district court imposed an illegal sentence because he should have been sentenced for domestic battery instead of attempted first-degree murder. He contends that because he was related to Michelle in the

27

past as her husband, he should have been charged with and sentenced for a domestic battery, not attempted first-degree murder, because domestic battery is a more specific charge.

*Standard of Review*

Our review over this issue of law is unlimited. *State v. Lee*, 304 Kan. 416, 417, 372 P.3d 415 (2016). A sentence is illegal under K.S.A. 2020 Supp. 22-3504(c)(1) when: (1) it is imposed by a court without jurisdiction; (2) it does not conform to the applicable statutory provisions, either in character or the term of punishment; or (3) it is ambiguous about the time and manner in which it is to be served. *State v. Hambright*, 310 Kan. 408, 411, 447 P.3d 972 (2019).

*Analysis*

The court may correct an illegal sentence at any time. Here, Davis claims his sentence does not conform to the applicable statutory provision. He claims the applicable statutory provision was K.S.A. 2008 Supp. 21-3412a (now K.S.A. 2020 Supp. 21-5414), the statute defining domestic violence, not our statutes defining attempted first-degree murder.

The court sentenced Davis for the specific crime he was convicted of—attempted first-degree murder. The court did not sentence him to a different crime. But that is what Davis is claiming should have been done:  he should have been sentenced for domestic battery—a crime which was never charged and for which he was never convicted— instead of the crime for which he was convicted and for which our court on direct appeal found substantial supporting evidence.

28

Domestic violence and attempted first-degree murder are wholly different crimes. To convict Davis of attempted first-degree murder, the State had to prove that Davis attempted to intentionally and with premeditation kill—or in this case aid and abet in the attempt to kill—Michelle. See K.S.A. 21-3301; K.S.A. 21-3401. On the other hand, to prove domestic battery, the State merely had to prove that Davis knowingly or recklessly caused bodily harm to a family or household member. See K.S.A. 2008 Supp. 21-3412a. There are significant differences between these crimes. Attempted murder requires a higher culpable mental state and a different objective for the victim: death and not merely bodily harm. Even though Michelle did not suffer fatal wounds in the attack, the State intended to prove—and did prove—that the objective of the attack was Michelle's death, not merely bodily harm. The State's decision to prosecute Davis for attempted first-degree murder was certainly within the prosecutor's discretion to determine who shall be charged and with what crimes. *State v. Williamson*, 253 Kan. 163, 165, 853 P.2d 56 (1993). The district court sentenced Davis accordingly. The district court did not err in doing so.

Affirmed.